Steven J. Reisman, Esq.
Jerry L. Hall, Esq. (*pro hac vice* forthcoming)
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022
Telephone:      (212) 940-8800
Facsimile:      (212) 940-8876
sreisman@kattenlaw.com
jerry.hall@kattenlaw.com
cindi.giglio@kattenlaw.com

Peter A. Siddiqui (*pro hac vice* forthcoming)
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, IL 60661
Telephone:      (312) 902-5455
Facsimile:      (312) 902-1061
peter.siddiqui@kattenlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SIZMEK INC., *et al.*,[1] | ) | Case No. 19-10971 (SMB) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DECLARATION OF SASCHA WITTLER, CHIEF FINANCIAL OFFICER**
**OF SIZMEK INC., (I) IN SUPPORT**
**OF CHAPTER 11 PETITIONS AND (II) PURSUANT TO LOCAL RULE 1007-2**

I, Sascha Wittler, hereby declare under penalty of perjury:

I am the Chief Financial Officer of Sizmek Inc. ("Sizmek"). Sizmek is a privately-held holding company organized under Delaware law and is wholly-owned by Solomon Acquisition Corp. ("Solomon"), a non-debtor. Sizmek and certain of its direct and indirect subsidiaries are debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"). In

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sizmek Inc. (4624); Point Roll, Inc. (3173); Sizmek DSP, Inc. (2319); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  401 Park Avenue South, Fifth Floor, New York, NY 10016.

that capacity, I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.  I joined Sizmek in August of 2018 and have served as Chief Financial Officer since January 2019.

1.      I submit this declaration (this "Declaration") to assist the Court and parties in interest in understanding the Debtors, their business, and the circumstances leading to these chapter 11 cases (the "Chapter 11 Cases").  I also submit this Declaration in support of the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and the relief the Debtors are seeking in the motions filed contemporaneously herewith.

2.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and my opinions based upon my experience and knowledge. I am over 18 years of age and authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would testify competently to the facts set forth herein.

### Preliminary Statement[2]

3.      Debtors commenced these Chapter 11 Cases on Friday, March 29, 2019 (the "Petition Date") on an accelerated timeline after they no longer had access to the cash needed to fund their payroll or near-term operations.  At the beginning of 2019, the Debtors learned that Vector Capital (the "Sponsor"), would not provide additional funding, leading to the agent under the Debtors' First Lien Financing Agreement, Cerberus Business Finance, LLC ("Cerberus") on behalf of the lenders thereunder (the "First Lien Lenders"), undertaking an extensive diligence

---

[2]    Capitalized terms used and not defined in this section have the meanings given to them elsewhere in this Declaration.

process whereby the First Lien Lenders would consider whether to replace the general partner of the Debtors' ultimate parent, thereby taking control.  On March 19, 2019, the First Lien Lenders provided the Debtors with notice of their intention not to go forward with the transaction. Subsequently, beginning on March 25, 2019, the First Lien Lenders exercised certain remedies, including restricting the Debtors' access to their cash management accounts, sweeping substantially all of the Debtors' and their non-Debtor affiliates' cash, and instructing the Debtors' clients to divert the Debtors' accounts receivable to  an account held by Cerberus, in its capacity as agent.

4.       Since the Petition Date, the outlook for the Debtors has improved dramatically.  The Debtors have now reached an agreement with Cerberus for the consensual use of cash collateral. Critically, the access to cash collateral will allow the Debtors to fund payroll and benefits for employees, stabilize operations, and allow the Debtors the opportunity to continue business as usual, subject to the restrictions of the bankruptcy process, while potentially engaging in a value-maximizing going concern transaction, marketing the Debtors' businesses in whole and/or in segments.

5.       Since the Petition Date, the Debtors and their professionals have received more than twenty additional inquiries from interested potential buyers.

6.       To familiarize the Court with the Debtors, their businesses, and the circumstances leading to these chapter 11 cases, I have organized this Declaration as follows:

- **Part I** provides a general overview of the Debtors' corporate history and operations;

- **Part II** describes the circumstances leading to these chapter 11 cases; and

- **Part III** sets forth certain additional information about the Debtors, as required by Local Rule 1007-2.

I.     **General Background**

A.     **Corporate History and Business Operations.**

7.     Sizmek was formed in 2014 following a spin off from Digital Generation ("DG"),
a publicly traded provider of digital media services to the advertising, entertainment, and broadcast
industries.  Since then, the Debtors have grown to become a leading online advertising, campaign
management, and distribution platform for advertisers, media agencies, and publishers.   The
Debtors assist their clients with reaching and engaging a broad consumer audience with advertising
and other content.  The Debtors deliver their advertising and digital content across multiple online
media channels such as digital video and mobile apps.  The Debtors facilitate the implementation
of targeted, data-driven advertising strategies which encompass all of the technology and
intelligence necessary to execute online advertisement campaigns globally.  To that end, the
Debtors provide a full suite of tools for buying and selling online media, targeting online
consumers using data-driven methods, delivering online advertisements, and tracking
advertisements as they get passed from advertiser to website publisher, and then from the website
publisher to the consumer's computer screen.  The Debtors derive the majority of their revenue
from volume-based fees for use of their digital campaign management and distribution platform.
As of the Petition Date, the Debtors enable their clients to deliver advertising and content to
consumers in 21 countries throughout the world.

8.     The Debtors' businesses fall within three distinct categories each of which can be
sold as a distinct business unit and will be marketed as such: (i) "Creative," (ii) "Media," and (iii)
"Data."  The Debtors' Creative business consists of an internet advertising delivery service that
helps website publishers generate advertising income and provides consumers free access to
content.  Through the Creative services, the Debtors and their affiliates globally serve and track
approximately 3 billion digital advertisements per day for approximately 1,500 advertisers in 30

countries, including Volkswagen, Chrysler, Unilever, Richemont, Chanel, H&M, and Apple, among others.

9.      The Debtors' Media business consists of running a platform that enables advertisers and their agencies to buy advertising placements on millions of websites across the globe. This platform is called a Demand Side Platform ("DSP"). The DSP allows advertisers or agencies to buy digital media in an automated fashion and assists in determining which ads should be delivered to which individual consumers. Within their Media business, the Debtors have two business models—a "Managed Service Business," in which the Debtors buy advertising slots or inventory across web pages, apply data and services, and sell the inventory at a higher price point, and a "Self-Service Platform," in which the Debtors provide clients access to the platform to conduct such transactions themselves in return for a fee.

10.     Finally, the Debtors run a Data business that operates under two business models. In the first model, the Debtors provide services that analyze websites and classify them based on content in order to prohibit or target certain types of advertising. Second, the Debtors run a Data Management Platform ("DMP") that processes non-identifiable information for the purpose of developing audience segments for targeted advertising, and also optimizes that advertising and content displayed on individual sites.

11.     In 2017, the Debtors resumed the process of rebuilding their legacy ad server which supports the Creative business, because the data infrastructure underlying the old business no longer supported the scale of the business and the complexity of requirements from advertisers. The rebuilding paused for a period and restarted in 2017. The Debtors have moved approximately 40% of their advertiser clients to the new platform, which represents about 10% of the Debtors' total client advertising volume in the Creative business. The remaining advertisers are on the old

5

platform, and the Debtors planned to migrate the remaining advertisers to the new platform by the start of 2020. This would allow the Debtors to wind down the old platform and benefit from lower operating costs, stronger product, and better competitive positioning.

12. Additionally, in 2017, through acquisition the Debtors significantly expanded their Media business capabilities which, as mentioned above, has two channels – Managed Service and Self-Service.

13. Following Sizmek's spinoff from DG in 2014, the company acquired several media and technology companies located in the U.S. and abroad to develop its platform, including Mediamind Technologies Inc., EyeWonder, Inc., Peer39 Inc., Republic Project, Inc., Aerify Media LLC, Pixello D.O.O., Be grad, StrikeAd, Inc., Rocket Fuel Inc., X Plus One Solutions, Inc., and Point Roll, Inc.

14. In August 2016, via a take-private transaction, the Debtors were acquired by the Sponsor. The Sponsor funded the purchase price with equity financing and approximately $160 million of senior secured debt provided by Wells Fargo. This debt was subsequently refinanced by the First Lien Lenders.

15. However, the Debtors faced setbacks in their Media business from the market shift to Self-Service campaigns, where advertisers and ad agencies manage campaigns in-house. This has resulted in a sharp decline in demand for Managed Service business that was not offset by corresponding increased demand in Self-Service businesses, which operates at a significantly lower margin. The Debtors have come to understand that they do not have the scale (large enough share of Media business) to justify costs of continuing their DSP. The Debtors have looked at new opportunities to help them to achieve the scale necessary to run their DSP business profitably, but the Debtors have not yet benefited from the growth of these new opportunities.

138455863_392525-00001

16.    Sizmek, Inc. is a Delaware entity that is a privately-held holding company for the other domestic Debtors, which are also privately held Delaware entities.  The Debtors and their non-Debtor affiliates—many of which are incorporated under the laws of various foreign jurisdictions—have domestic and international offices, including two leases in New York, New York.  The Debtors' principal place of business is the United States.  Many of the Debtors' assets, including a significant portion of their intellectual property, are held in Israel.  The chart attached hereto as **Exhibit A** sets forth the Debtors' current corporate structure.

17.    As of the Petition Date, the Debtors and their non-Debtor affiliates employ approximately 1,114 full-time employees in 19 countries.  The Debtors operate in North America, Europe, the Middle East, Africa, Asia Pacific, and Latin America.

### B.    Recapitalization Efforts in 2018.

18.    Following the Sponsor's acquisition of Sizmek in 2016—and Sizmek's subsequent acquisition of Rocket Fuel Inc. ("Rocket Fuel") in 2017—the Debtors' liquidity became constrained by market shifts in areas affecting certain of their services.  As mentioned, the preference on the part of the Debtors' customer base for Self-Service platforms (versus Managed Service which delivers greater revenue and profits for the Debtors) was primary among them.  The business acquired in 2017 materially raised the Debtors' working capital requirements.  The Debtors faced challenges meeting these requirements associated with the operation of the newly acquired business and the DSP product in particular.  These new demands were additional to the capital and resource demands for the development and migration of the legacy sever platform (Creative Service), which was underway.  From full fiscal years 2016 to 2017, Sizmek's and Rocket Fuel's combined net revenue (net revenue is gross revenue minus the pass through costs associated with buying media) fell from approximately $399 million to $289 million and by the first quarter of 2019 projected revenues had fallen to $170 million.

19.     As a result, the Debtors began exploring strategic alternatives in the spring of 2018. In mid-2018, the Debtors entered into a transaction with the Sponsor and the First Lien Lenders to restructure the Debtors' capital structure.  Specifically, in exchange for retention of 90% percent of the equity interests of the Debtors' ultimate parent, the Sponsor agreed to provide $30 million of new-money financing on a second-lien basis, which amount was to be funded in two equal tranches:  the first upon close of the transaction, and the second on or before January 31, 2019. The First Lien Lenders agreed to certain concessions and obtained 10% of the equity interests in the Debtors' ultimate parent.  Additionally, the First Lien Lenders agreed to accept payment-in-kind on account of the interest expense under the First Lien Financing Agreement throughout calendar year 2019.  As discussed below, the Sponsor elected not to provide the Debtors with the additional $15 million on January 31, 2019 (the second half of the $30 million tranche).  This triggered an event of default under the First Lien Financing Agreement.

C.      **The Debtors' Capital Structure.**

20.     As of the Petition Date, the Debtors had approximately $172 million of aggregate principal funded indebtedness, including accrued and unpaid interest, under that certain financing agreement, dated September 6, 2017, by and between Cerberus and PEPI Capital, L.P. as lenders, Sizmek Technologies, Inc. as borrower (the "Borrower"), Solomon Acquisition Corp., Sizmek, Rocket Fuel, and Point Roll, Inc. as guarantors, and Cerberus as Administrative Agent, that provides for a total facility of $160 million (as amended, restated, modified, or supplemented from time to time, the "First Lien Financing Agreement").

21.     The First Lien Financing Agreement, which memorializes the terms of the Debtors' first lien funded indebtedness, is made up of a $135 million term loan and a revolving facility in an aggregate amount not to exceed $25 million.  The Debtors also have a second lien tranche of debt pursuant to that certain financing agreement, dated as of August 6, 2018 (as amended from

time to time, the "Second Lien Financing Agreement"), by and among Borrower, the lenders party thereto (the "Second Lien Lenders"), Sizmek Finco, LLC as collateral agent and administrative agent (the "Second Lien Agent," and together with the Second Lien Lenders, the "Second Lien Secured Parties"), and Solomon Acquisition Corp., Sizmek, Point Roll, Inc., Rocket Fuel, X Plus Two Solutions, LLC, X Plus One Solutions, Inc., Wireless Developer, Inc., and Wireless Artist LLC, as guarantors (collectively, the "Second Lien Guarantors" and together with the Borrower, the "Prepetition Second Lien Obligors").

22.     The Second Lien Financing Agreement provides for a $30 million second lien tranche, consisting of a $15 million loan and a $15 million delayed draw facility.  The $15 million delayed draw facility was never funded by the Sponsor and thus not drawn.

23.     Finally, the Debtors also have third lien debt pursuant to that certain Financing Agreement, dated as of August 6, 2018 (as amended from time to time, the "Third Lien Financing Agreement" and together with the First Lien Financing Agreement and Second Lien Financing Agreement, collectively, the "Financing Agreements"), by and among Borrower, the lenders party thereto (the "Third Lien Lenders" and together with the First Lien Lenders and Second Lien Lenders, the "Secured Lenders"), Cerberus as collateral agent and administrative agent (the "Third Lien Agent" and together with the Third Lien Lenders, the "Third Lien Secured Parties" and together with the First Lien Secured Parties and the Second Lien Secured Parties, the "Prepetition Secured Parties"), and Solomon Acquisition Corp., Sizmek, Point Roll, Inc., Rocket Fuel, X Plus Two Solutions, LLC, X Plus One Solutions, Inc., Wireless Developer, Inc., and Wireless Artist LLC, as guarantors (the "Third Lien Guarantors" and together with the Borrower, the "Third Lien Obligors," and collectively, the Third Lien Guarantors, the First Lien Guarantors and Second Lien Guarantors, the "Guarantors," and the First Lien Obligors, Second Lien Obligors, and Third Lien

9

Obligors, the "Prepetition Obligors").  The third lien tranche under the Financing Agreements is

comprised of the sum of the PIK interest that has accrued under the first and second lien tranches.

24.     The table below summarizes the Debtors' prepetition capital structure.

| Indebtedness | Balance Outstanding as of Petition Date |
|---|---|
| First Lien | $157,058,755.96[3] |
| Second Lien | $15,000,000.00 |
| **Total Funded Indebtedness** | **$172,058,755.96** |
| Third Lien | $6,323,107.07 |
| **Total Secured Debt** | **$178,381,863.02** |
| Additional Unsecured Liabilities[4] | $104,784,442.00 |
| **Total Liabilities** | **$283,166,305.02** |

## II.     Events Leading to these Chapter 11 Cases

25.     In January 2019, the Sponsor gave notice that the Sponsor did not intend to fund

the additional $15 million the Sponsor had agreed to fund under the terms of the recapitalization

deal that was struck in mid-2018.  This triggered a default under the First Lien Financing

Agreement, and gave the First Lien Lenders the right to, among other remedies, take over majority

control of the Debtors' ultimate parent.[5]

26.     Beginning in February 2019, the First Lien Lenders commenced a significant

diligence process of the Debtors' and their non-Debtor affiliates' businesses, including joining

Debtors' United States sales conference and visits to multiple Debtors' office locations and

---

[3]   The Debtors believe that the outstanding amount under the First Lien Financing Agreement has been reduced on account of the First Lien Lender's cash sweeps and corresponding paydowns of the amount outstanding under such facility.

[4]   Additional Unsecured Liabilities includes, among other things, trade payables and accrued and unpaid expenses.

[5]   Pursuant to the Second Lien Financing Agreement, an event of default occurs where "the Borrower fails to receive on or prior to February 1, 2019 the remaining $15,000,000 in loan proceeds (out of a total of $30,000,000 in loan proceeds) pursuant to the Second Lien Financing Agreement (less the proceeds of new public or private Equity Issuances (other than Disqualified Equity Issuances) to the extent such proceeds are not used for Cure Rights." *Second Lien Financing Agreement*, Art. XI.m (terms used here but otherwise not defined are consistent with such definitions in the applicable Second Lien Financing Agreement).

138455863_392525-00001

meeting with key personnel of the Debtors with participation of Debtors' management team. Starting with February 2019, for an approximately six week period, members of Debtors' management and First Lien Lenders were in constant, almost daily communications regarding the Debtors' overall operations and cash management consequences. Notwithstanding these efforts, approximately six weeks later, on March 19, 2019, the First Lien Lenders gave written notice of their intention not to exercise their rights to effectively take over majority equity control of the Debtors' ultimate parent. The following week, the First Lien Lenders informed the Debtors that, due to the event of default under the First Lien Financing Agreement, the Debtors would not be given access to funds under the revolving credit facility, which the Debtors had forecasted to be accessible for business operations.

27.     On March 26, 2019, the First Lien Lenders exercised certain remedies that blocked the Debtors' access to their cash management accounts. Thereafter, the Debtors ability to fund their ongoing operations was severely constrained.

28.     Most importantly, the Debtors were unable to fund payroll obligations for U.S. employees for the period of March 16, 2019 through March 29, 2019, which was due to be paid on the Petition Date.

29.     The Debtors and Cerberus conducted continuous discussions, in order for the Debtors to have potentially cash access, but ultimately were not able to reach a mutually acceptable solution.

30.     Additionally, on March 28, 2019, the First Lien Lenders sent letters to many of the Debtors' customers directing them to remit their payments to alternative accounts.

31.     As a result of these limitations on liquidity and other factors, on March 29, 2019, the Debtors' Board of Directors unanimously authorized this chapter 11 filing.

138455863_392525-00001

32.     Since the Petition Date, the outlook for the Debtors has improved dramatically.  The Debtors have now reached an agreement with Cerberus for the consensual use of cash collateral.  Critically, the access to cash collateral will allow the Debtors to stabilize operations, fund employees and allow the Debtors the opportunity to engage in a value-maximizing going concern transaction.

33.     Since the Petition Date, the Debtors and their professionals have been fielding dozens of inbound calls.  Specifically, since FTI was hired, the Debtors, Vector, and FTI have received more than thirty additional inquiries from interested potential buyers, including more than ten parties who have already signed a non-disclosure agreement and have access to a data room with diligence items, and these parties are vying for the opportunity to be a stalking horse bidder with respect to the assets that they are interested in.

34.     As soon as practicable, the Debtors will supplement this Declaration and file further pleadings to seek additional relief, as necessary.

**III.    First Day Motions**

35.     Contemporaneously herewith, the Debtors have filed the First Day Motions[6] in these Chapter 11 Cases seeking orders granting various forms of relief intended to allow the Debtors to transition smoothly into chapter 11, while continuing to operate their business without disruption. The First Day Motions include:

- *Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases*;

- *Debtors' Motion for Entry of an Order (A) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, Statements of*

---

[6]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the respective First Day Motions.

*Financial Affairs, (B) Rule 2015.3 Financial Reports, and (C)Waiving Requirements to File Lists of Equity Holders*;

- *Debtors' Application for Retention and Appointment of Stretto as Claims and Noticing Agent*;

- *Debtors' Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)*;

- *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief*;

- *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors (A) to Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*; and

- *Debtors' Motion for Entry of an Order Establishing Certain Notice, Case Management, and Administrative Procedures*.

36.    The First Day Motions seek authority, among other things, for the Debtors to use Cash Collateral, honor employee wages and benefits obligations, and ensure the continuation of the Debtors' cash management systems.  I believe that the relief requested in the First Day Motions is necessary to give the Debtors an opportunity to work towards successful chapter 11 cases that will benefit all of the Debtors' stakeholders.

37.    Several of these First Day Motion request authority to pay certain prepetition claims.  I understand that Rule 6003 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first 20 days following the filing of a chapter 11 petition, "except to the extent relief is necessary to avoid immediate an irreparable harm."  In light of this requirement, the Debtors have narrowly tailored their requests for immediate authority to pay certain prepetition claims to those circumstances

where the failure to pay such claims would cause immediate and irreparable harm to the Debtors and their estates.  Other relief will be deferred for consideration at a later hearing.

38.      I am familiar with the content and substance of the First Day Motions.  I believe approval of the relief sought in each of the motions is critical to allowing the Debtors to transition smoothly into chapter 11, while continuing their business without disruption.

## IV.    Information Required by Local Bankruptcy Rule 1007-2

39.      Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors, which I have provided in the exhibits attached hereto as **Exhibit B** through **Exhibit M**. Specifically, these exhibits contain the following information with respect to the Debtors (on a consolidated basis, unless otherwise noted):[7]

- **Exhibit B**. Pursuant to Local Bankruptcy Rule 1007-2(a)(3), provides the names and addresses of the members of, and attorneys for, any committee organized prior to the order for relief in these chapter 11 cases, and a brief description of the circumstances surrounding the formation of the committee and the date of the formation.

- **Exhibit C**. Pursuant to Local Bankruptcy Rule 1007-2(a)(4), provides the following information with respect to each of the holders of the Debtors' fifty (50) largest unsecured claims, excluding claims of insiders:  the creditor's name; address (including the number, street, apartment, or suite number, and zip code, if not included in the post office address); telephone number; the name(s) of the person(s) familiar with the Debtors' account; the nature and approximate amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

- **Exhibit D**. Pursuant to Local Bankruptcy Rule 1007-2(a)(5), provides the following information with respect to each of the holders of the five largest secured claims against the Debtors:  the creditor's name; address (including the number, street, apartment, or suite number, and zip code, if not included in the post office address); the amount of the claim; a brief description of

---

[7]    The information contained in **Exhibit C** through **Exhibit N** attached to this Declaration does not constitute an admission of liability by, nor is it binding on, the Debtors.  The Debtors reserve all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

138455863_392525-00001

the claim; an estimate of the value of the collateral securing the claim; and an indication of whether the claim or lien is disputed at this time.

- **Exhibit E**. Pursuant to Local Bankruptcy Rule 1007-2(a)(6), provides a summary of the Debtors' assets and liabilities.

- **Exhibit F**. Pursuant to Local Bankruptcy Rule 1007-2(a)(7), provides a summary of the publicly held securities of the Debtors.

- **Exhibit G**. Pursuant to Local Bankruptcy Rule 1007-2(a)(8), provides the following information with respect to any property in possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditors, or agent for such entity: the name; address; and telephone number of such entity and the court in which any proceeding relating thereto is pending.

- **Exhibit H**. Pursuant to Local Bankruptcy Rule 1007-2(a)(9), provides a list of property comprising the premises owned, leased, or held under other arrangement from which the Debtors operate their business.

- **Exhibit I**. Pursuant to Local Bankruptcy Rule 1007-2(a)(10), sets forth the location of the Debtors' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

- **Exhibit J**. Pursuant to Local Bankruptcy Rule 1007-2(a)(11), provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property where a judgment or seizure of their property may be imminent.

- **Exhibit K**. Pursuant to Local Bankruptcy Rule 1007-2(a)(12), sets forth a list of the names of the individuals who comprise the Debtors' existing senior management, such individual's tenure with the Debtors, and a brief summary of such individual's relevant responsibilities and experience.

- **Exhibit L**. Pursuant to Local Bankruptcy Rule 1007-2(b)(1)–(2)(A), provides the estimated amount of payroll to the Debtors' employees (not including officers, directors, and equity holders) and the estimated amounts to be paid to officers, equity holders, directors, and financial and business consultants retained by the Debtors, for the 30-day period following the Petition Date.

- **Exhibit M**. Pursuant to Local Bankruptcy Rule 1007-2(b)(3), provides a schedule, for the 30-day period following the Petition Date, of estimated cash receipts and disbursements, net gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional

138455863_392525-00001

fees, for the 30-day period following the filing of the chapter 11 cases, and any other information relevant to an understanding of the foregoing.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

statements are true and correct.

Dated: April 2, 2019
New York, New York

/s/ Sascha Wittler

Name: Sascha Wittler
Title:  Chief Financial Officer

16

# EXHIBIT A

**Corporate Structure Chart**

138455863_392525-00001

## **EXHIBIT B**

### **Committees Organized Prepetition**

| Prepetition Committee | Counsel | Members |
|---|---|---|
| [TO COME][1] | | |

---

[1]    Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.

## EXHIBIT C

### Consolidated List of the Holders of the Debtors' 50 Largest Unsecured Claims

Pursuant to Local Rule 1007-2(a)(4), the following is a consolidated list of the Debtors' creditors holding the 50 largest unsecured claims (the "Consolidated Creditor List") based on the Debtors' unaudited books and records as of the Petition Date.  The Consolidated Creditor List has been prepared in accordance with Bankruptcy Rule 1007(d) and does not include (i) persons who come within the definition of "insider" set forth in section 101(31) of the Bankruptcy Code or (ii) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 50 largest unsecured claims.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.  The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 1 | Index Exchange, Inc. | Mr. Andrew Casale 416-785-5908 74 Wingold Avenue Toronto, ON M6B 1P5 Canada | Trade payable | | | | $8,912,926 |
| 2 | PubMatic, Inc. | Mr. Rajeev Goel 650-331-3485 press@pubmatic.com 305 Main Street, First Floor Redwood City, CA 94063 United States | Trade payable | | | | $7,339,230 |
| 3 | OpenX Technologies Inc. | Mr. John Gentry 626-204-0811 marketing@openx.com 888 East Walnut Street, 2nd Floor Pasadena, CA 91101 United States | Trade payable | | | | $5,918,022 |
| 4 | AppNexus, Inc. | Mr. Michael Rubenstein 646-825-6460 pr@appnexus.com 28 West 23rd Street, Floor 4 New York, NY 10010 United States | Trade payable | | | | $5,279,740 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 5 | Google Inc. | Attn: Legal Dept<br>212-683-0001<br>111 8th Avenue, 10th Floor<br>New York, NY 10011<br>United States | Trade payable | | | | $4,571,033 |
| 6 | AOL Advertising Inc. | Attn: Legal Dept<br>212-426-1700<br>press@oath.com<br>770 Broadway, 5th Floor<br>New York, NY 10003<br>United States | Trade payable | | | | $4,132,474 |
| 7 | Rubicon Project Inc. | Mr. Michael G. Barrett<br>310-207-0272<br>investor@rubiconproject.com<br>12181 Bluff Creek Drive, 4th Floor<br>Los Angeles, CA 90094<br>United States | Trade payable | | | | $3,563,941 |
| 8 | Bidswitch Inc. | Mr. Barry Adams<br>646-762-2445<br>sales@bidswitch.com<br>625 Broadway, 10th Floor<br>New York, NY 10012<br>United States | Trade payable | | | | $2,938,061 |
| 9 | Media.net Advertising FZ-LLC | Mr. Vaibhav Arya<br>971-50-842 -6448<br>advertisers@media.net<br>107/108, DIC Building 5<br>Dubai Internet City, Dubai 215028<br>United Arab Emirates | Trade payable | | | | $1,864,590 |
| 10 | Vector Capital Management, LP | Mr. Ron Baden<br>415-293-5000<br>vectorcapital@vectorcapitalmgmt.com<br>One Market Street, Steuart Tower 23rd Floor<br>San Francisco, CA 94105<br>United States | Professional Services | | | | $1,800,000 |
| 11 | Amazon Web Services Emea Sarl | Mr. Joseph DePalo<br>206-266-4064<br>1200 12th Avenue South, Suite 1200<br>Seattle, WA 98144<br>United States | Trade payable | | | | $1,327,357 |
| 12 | Integral Ad Science, Inc. | Ms. Lisa Utzschneider<br>646-278-4871<br>press@integralads.com<br>95 Morton Street, 8th Floor<br>New York, NY 10014<br>United States | Trade payable | | | | $1,183,829 |
| 13 | RhythmOne (US) Holdings Inc. | Mr. Richard O'Connor<br>415-655-1450<br>IR@rhythmone.com<br>251 Kearny Street, 2nd Floor<br>San Francisco, CA 94108<br>United States | Trade payable | | | | $1,062,836 |

2

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 14 | Sovrn Inc. | Mr. Walter Knapp 303-493-5490 andy@sovrn.com 1750 29th Street, Suite 2036 Boulder, CO 80301 United States | Trade payable | | | | $1,006,093 |
| 15 | LiveRamp Corp. | Mr. Scott E. Howe 866-352-3267 investor.relations@liveramp.com 225 Bush Street, 17th Floor San Francisco, CA  94104 United States | Trade payable | | | | $1,004,449 |
| 16 | GumGum, Inc. | Mr. Ophir Tanz 844-522-7270 PR@gumgum.com 1314 7th Street, 5th Floor Santa Monica, CA 90401 United States | Trade payable | | | | $920,439 |
| 17 | Facebook, Inc. | Mr. Mark Elliot Zuckerberg 650-543-4800 1601 Willow Road Menlo Park, CA 94025 United States | Trade payable | | | | $864,116 |
| 18 | Lohika Systems, Inc. | Mr. Daniel Dargham 650-753-2025 info@lohika.com 1001 Bayhill Drive, Suite 108 San Bruno, CA 94066 United States | Professional Services | | | | $803,715 |
| 19 | EntIT Software LLC | Attn: Legal Dept 301-838-5000 investors@microfocus.com One Irvington Center, 700 King Farm Boulevard Suite 400 Rockville, MD 20850-5736 United States | | | | | $739,348 |
| 20 | comScore Inc | Mr. Bryan J. Wiener 703-438-2000 press@comscore.com 11950 Democracy Drive, Suite 600 Reston, VA 20190 United States | Trade payable | | | | $673,497 |
| 21 | Placemedia, Inc. | Attn: Legal Dept 818-285-0360 14930 Ventura Boulevard, Suite 210 Sherman Oaks, CA 91403 United States | Trade payable | | | | $618,949 |
| 22 | Sonobi Inc. | Mr. Michael Connolly 212-796-4579 michael@sonobi.com 915 Broadway, Suite 1802 New York, NY 10010 United States | Trade payable | | | | $576,853 |

3

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 23 | Equinix, Inc. | Mr. Charles J. Meyers 800-322-9280 invest@equinix.com One Lagoon Drive Redwood City, CA 94065 United States | Trade payable | | | | $574,156 |
| 24 | Cox Comet, LLC | Attn: Legal Dept 404-843-5000 1001 Summit Boulvard, Suite 1200 Atlanta, GA 30319 United States | Professional Services | | | | $522,194 |
| 25 | Oracle America Inc. | Attn: Legal Dept 650-506-5200 500 Oracle Parkway Redwood City, CA 94065 United States | Trade payable | | | | $441,705 |
| 26 | Double Verify, Inc. | Attn: Mr. Nicola Allais 212-631-2111 233 Spring Street, 4th Floor New York, NY 10013 United States | Trade payable | | | | $440,498 |
| 27 | Native Ads Inc | Attn: Legal Dept. 855-981-8007 710 - 1090 W. Pender St Vancouver, BC V6E 2N7 Canada | Trade payable | | | | $410,163 |
| 28 | EMX Digital LLC | Attn: Legal Dept. 847-378-2240 222 North LaSalle Street, Suite 1650 Chicago, IL 60601 United States | Trade payable | | | | $403,094 |
| 29 | SpotXchange, Inc. | Attn: Michael Shehan 303-345-6650 11030 Circle Point Road, Suite 350 Westminister, CO 80020 United States | Trade payable | | | | $398,990 |
| 30 | Akamai Technologies, Inc. | Attn: Dr. F. Thomson Leighton 617-444-3000 150 Broadway Cambridge, WA 02142 United States | Professional Services | | | | $388,187 |
| 31 | Oath (Americas) Inc. | Attn: Mr. Don Neff 410-537-8500 3700 Odonnell Street Baltimore, MD 21224 United States | Trade payable | | | | $385,356 |
| 32 | MoPub, Inc. | Attn: Mr. Jim Payne 415-426-4200 1355 Market Street, Suite 900 San Francisco, CA 94103 United States | Trade payable | | | | $367,482 |

4

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 33 | Switch | Attn: Legal Department 7135 South Decatur Blvd. Las Vegas, NV 89118 United States | Trade payable | | | | $366,000 |
| 34 | EMC Corp. | Attn: Denis G Cashman 508-435-1000 Ulica Inflancka 4A Hopkinton, MA 01848 United States | Trade payable | | | | $324,156 |
| 35 | District M Inc. | Attn: Mr. L. C. Genest 888-881-6930 5455 de Gaspé Avenue, Suite 730 Montreal, QC H2T 3B3 Canada | Trade payable | | | | $308,808 |
| 36 | Telaria, Inc. | Attn: Mr. Mark S. Zagorski 646-723-5300 info@telaria.com 222 Broadway, 16th Floor New York, NY 10038 United States | Trade payable | | | | $295,929 |
| 37 | PulsePoint, Inc. | Attn: Mr. Sloan Gaon 212-706-4800 360 Madison Avenue, 14th Floor New York, NY 10017 United States | Trade payable | | | | $295,131 |
| 38 | Internap Networks Services Corp. | Attn: Legal Dept. 404-302-9700 12120 Sunset Hills Road, Suite 330 Reston, VA 20190 United States | Professional Services | | | | $269,717 |
| 39 | Beachfront Media LLC | Attn: Legal Dept. 818-237-5964 info@beachfrontmedia.com 727 South Main Street Burbank, CA 91506 United States | Trade payable | | | | $262,623 |
| 40 | Neustar Information Services, Inc. | Attn: Mr. Paul S. Lalljie 571-434-5400 21575 Ridgetop Circle Sterling, VA 20166 United States | Trade payable | | | | $257,659 |
| 41 | Smart Adserver | Attn: Mr. Cyrille Geffray 331-5-357-7965 8-10 rue Saint Fiacre Paris, 75002 France | Trade payable | | | | $250,483 |
| 42 | Smaato Inc. | Attn: Legal Dept. 646-650-5030 americas@smaato.com 350 Fifth Avenue, Suite 7700 New York, NY 10118 United States | Trade payable | | | | $245,000 |

5

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
|---|---|---|---|---|---|---|---|
| 43 | Aztek Technologies (1984) Ltd | Attn: Legal Dept. 972-8918-1111 12 Silver Aba Hilel Lod,  7129409 Israel | Professional Services | | | | $244,418 |
| 44 | Nielsen | Attn: Legal Dept. 800-864-1224 85 Broad Street New York, NY 10004 United States | Trade payable | | | | $229,060 |
| 45 | Outbrain Inc. | Attn: Mr. Yaron Galai 646-867-0149 39 West 13th Street New York, NY 10011 United States | Trade payable | | | | $193,558 |
| 46 | Amsalem Business Travel LLC | Attn: Legal Dept. 1680 State Route 23 North, Suite140 Wayne, NJ 07470 United States | Trade payable | | | | $150,000 |
| 47 | Evoque Dawn US Holdings LLC | Attn: Legal Dept. evoque@evoquedcs.com 17304 Preston Road, Suite 814 Dallas, TX | Trade payable | | | | $140,232 |
| 48 | Westminster Council Tax | Attn: Westminster Council PO Box 165, Erith, DA8 9DW UK | Trade payable | | | | $136,220 |
| 49 | Eyeota Pte Ltd | Attn: Legal Dept. 33 Irving Pl, 3rd Fl New York, NY 10003 | Professional Services | | | | $120,486 |
| 50 | GALIL SOFTWARE &TECHNOLOGIC SERVICE | Attn: Legal Dept. 054-5656760 2003 St. Industrial Area Nazareth, 16164 Israel | Professional Services | | | | $110,842 |

138455863_392525-00001

## EXHIBIT D

### Consolidated List of the Holders of the Debtors' Largest Secured Claims

Pursuant to Local Rule 1007-2(a)(5), the following is a list of creditors holding the five largest secured claims against the Debtors, on a consolidated basis, as of the Petition Date.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.  The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.  The descriptions of the collateral securing the underlying obligations are intended only as brief summaries.  In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| | Name of Creditor | Creditor Name, and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | Amount of Claim | Collateral Description and Value |
|---|---|---|---|---|
| 1. | Cerberus Capital Management, L.P. | 875 Third Avenue, 10th Floor New York, NY 10022 +1-212-891-2100 | $162,830,617.57 | [TO COME][1] |
| 2. | Sizmek Finco, LLC (Vector Capital Management) | One Market Street Steuart Tower, 23rd Floor San Francisco, California 94105 | $15,551,245.45 | [TO COME] |

---

[1] Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.

## EXHIBIT E

### Summary of the Debtors' Assets and Liabilities

Pursuant to Local Rule 1007-2(a)(6), the following are estimates of the Debtors' total assets and liabilities on a consolidated basis. The following financial data is the latest available information and reflects the Debtors' financial condition, as consolidated with their affiliated debtors and non-debtors as of the Petition Date.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

| Assets and Liabilities | Amount |
|---|---|
| Total Assets | $184,858,371.35 |
| Total Liabilities | $281,657,902.75 |

## EXHIBIT F

### Summary of the Publicly Held Securities of the Debtors

Pursuant to Local Rule 1007-2(a)(7), the following lists the number and classes of shares of stock, debentures, or other securities of the Debtors that are publicly held, and the number of holders thereof.

| | Publicly Held Security | Issued | Outstanding | Holders |
|---|---|---|---|---|
| | [TO COME][1] | | | |

Pursuant to Local Rule 1007-2(a)(7), the following lists the number and classes of shares of stock of the Debtors that are publicly held by the Debtors officers and directors.

| | Name of Beneficial Owner | Title | Amount of Beneficial Ownership | Percentage of Common Stock Outstanding |
|---|---|---|---|---|
| | [TO COME] | | | |

---

[1]    Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.

## **EXHIBIT G**

### **Summary of the Debtors' Property Held by Third Parties**

Pursuant to Local Rule 1007-2(a)(8), the following lists the Debtors' property, as of the Petition Date, that is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor, or agent for any such entity.

Certain property of the Debtors is likely to be in the possession of various other persons, including maintenance providers, shippers, common carriers, materialmen, custodians, public officers, mortgagees, pledges, assignees of rents, secured creditors, or agents.  Through these arrangements, the Debtors' ownership interest is not affected.  In light of the movement of this property, providing a comprehensive list of the persons or entities in possession of the property, their addresses and telephone numbers, and the location of any court proceeding affecting such property would be impractical.

## <u>EXHIBIT H</u>

**Summary of the Debtors' Property From Which the Debtors Operate Their Business**

Pursuant to Local Rule 1007-2(a)(9), the following lists the location of the premises owned, leased, or held under other arrangement from which the Debtors operate their business as of the Petition Date.

| Property Address | City | State | Country | Owned or Leased |
|---|---|---|---|---|
| 195 Broadway, Suite 1000 | New York | NY | USA | Leased |
| 2000 Seaport Blvd, Suite 400 | Redwood City | CA | USA | Leased |
| 350 Orleans, Suite 1300 | Chicago | IL | USA | Leased |
| 2121 Park Place, Suite 250 | El Segundo | CA | USA | Leased |
| 401 Park Avenue South, Suite 500 | New York | NY | USA | Leased |
| 22 Fourth Street, Suite 400 | San Francisco | CA | USA | Leased |
| 3200 Horizon Drive, Suite 120 | King of Prussia | PA | USA | Leased |
| 6601 Center Dr West, Suite 350 | Los Angeles | CA | USA | Leased |
| 4050 Hunsaker Street, Suite 100 | East Lansing | MI | USA | Leased |
| 191 Peachtree Street NE, Suite 900 | Atlanta | GA | USA | Leased |
| 2500 Bee Caves Road, Building 1, Suite 150 | Austin/Rollingwood | TX | USA | Leased |
| 2200 Renaissance Blvd, Suite 410 | King of Prussia | PA | USA | Leased |
| 77 Geary Street, Suite 520 | San Francisco | CA | USA | Leased |
| 1515 Wazee Street, Suite 380 | Denver | CO | USA | Leased |
| 343 Sansome Street, Suite 505 | San Francisco | CA | USA | Leased |
| 101 West Grand Avenue, Suite 650 | Chicago | IL | USA | Leased |
| 1920 McKinney Ave, 5th Floor | Dallas | TX | USA | Leased |

| Property Address | City | State | Country | Owned or Leased |
|---|---|---|---|---|
| 1050 Crown Pointe Parkway, Suite 500 | Atlanta/Dunwoody | GA | USA | Leased |
| 3250 NE 1st Avenue, Suite 305 | Miami | FL | USA | Leased |
| 50 Washington Street, Suite 1101 | South Norwalk | CT | USA | Leased |
| 111 E Wacker, Suites 400 | Chicago | IL | USA | Leased |

138455863_392525-00001

## EXHIBIT I

**Location of the Debtors' Substantial Assets, Books and Records,
and Nature and Location of the Debtors' Assets Outside the United States**

Pursuant to LBR 1007-2(a)(10), the following provides the location of the Debtors' substantial assets, books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States as of the Petition Date.

| The Debtors' Assets | Location |
|---|---|
| Approximately $14M in total assets consisting of cash and cash equivalents, receivables, and property, plant & equipment. | UK |

7

## <u>EXHIBIT J</u>

**Summary of Legal Actions against the Debtors**

Pursuant to Local Rule 1007-2(a)(11), the following lists material actions and proceedings pending or threatened against the Debtors or their properties where a judgment against the Debtors or a seizure of their property may be imminent as of the Petition Date.  This list reflects actions or proceedings considered material by the Debtors and, if necessary, will be supplemented in the corresponding schedules to be filed by the Debtors in these chapter 11 cases.

| Entity | Counterparty | Nature of the Claim | Status |
|---|---|---|---|
| [TO COME][1] | | | |

---

[1]    Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.

**EXHIBIT K**

**The Debtors' Senior Management**

Pursuant to Local Rule 1007-2(a)(12), the following provides the names of the individuals who constitute the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their responsibilities and relevant experience as of the Petition Date.

| Name | Position |
|------|----------|
| Mark Grether | President and Chief Executive Officer |
| Sascha Wittler | Chief Financial Officer |
| George Pappachen | General Counsel |

## EXHIBIT L

**The Debtors' Payroll for the 30 Day Period**
**Following the Filing of the Debtors' Chapter 11 Petitions**

Pursuant to Local Rules 1007-2(b)(1)-(2)(A) and (C), the following provides, for the 30-day period following the Petition Date, the estimated amount of weekly payroll to the Debtors' employees (exclusive of officers, directors, and stockholders), the estimated amount paid and proposed to be paid to officers, stockholders, and directors, and the amount paid or proposed to be paid to financial and business consultants retained the Debtors.

| Payments | Payment Amount |
|---|---|
| [TO COME][1] | |

---

[1]   Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.

## **EXHIBIT M**

### **The Debtors' Estimated Cash Receipts and Disbursements for the**
### **Thirty (30) Day Period Following the Filing of the Chapter 11 Petitions**

Pursuant to Local Rule 1007-2(b)(3), the following provides, for the 30-day period following the Petition Date, the Debtors estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| Type | Amount |
|---|---|
| Cash Receipts | [TO COME][1] |
| Cash Disbursements | |
| Net Cash Loss | |
| Unpaid Obligations (excluding professional fees) | |
| Unpaid Receivables (excluding professional fees) | |

---

[1]   Due to exigent circumstances and the Debtors' limited resources, this information was not available as of filing. The Debtors will supplement the Declaration with this information as soon as practicable.