Steven J. Reisman, Esq.
Jerry L. Hall, Esq. (*pro hac vice* forthcoming)
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022
Telephone:      (212) 940-8800
Facsimile:      (212) 940-8876
sreisman@kattenlaw.com
jerry.hall@kattenlaw.com
cindi.giglio@kattenlaw.com

Peter A. Siddiqui (*pro hac vice* forthcoming)
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, IL 60661
Telephone:      (312) 902-5455
Facsimile:      (312) 902-1061
peter.siddiqui@kattenlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SIZMEK INC., *et al.*,[1] | Case No. 19-10971 (SMB) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION**
**FOR THE ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C.**
**§ 363; AND (II) GRANTING ADEQUATE PROTECTION PURSUANT**
**TO 11 U.S.C. §§ 361, 362, 363, AND 507, AND SCHEDULING A**
**FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sizmek Inc. (4624); Sizmek DSP, Inc. (2319); Point Roll, Inc. (3173); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914). The location of the Debtors' service address for purposes of these chapter 11 cases is: 401 Park Avenue South, Fifth Floor, New York, NY 10016.

[2]   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Sascha Wittler Chief Financial Officer of Sizmek Inc., (I) in Support of Chapter 11 Petitions and (II) Pursuant to Local Rule 1007-2* (the "First Day Declaration"), filed on April 2, 2019.

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Interim Order"),[3] (a) authorizing the Debtors' use of Cash Collateral on an interim

basis pending a final hearing on this Motion (the "Final Hearing") to consider entry of a final order

(the "Final Order"), (b) granting adequate protection as set forth herein, (c) modifying the

automatic stay, and (d) scheduling the Final Hearing within approximately 25 days of the

commencement of these chapter 11 cases.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated February 1, 2012.   The Debtors confirm their consent,

pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to

the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that

it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 361, 362, 363, and 507

of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy

Rules for the Southern District of New York (the "Local Rules").

---

[3]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Order.

138472731_392525-00001

**Background**

I.     **General Background.**

5.      Sizmek Inc., together with its Debtor and non-Debtor affiliates, is a leading online advertising campaign management and distribution platform for advertisers, media agencies, and publishers.  The Debtors and their non-Debtor affiliates, which have approximately 1,114 employees worldwide, assist their clients with engaging a broad consumer audience in 19 countries across multiple online media channels by facilitating the implementation of targeted, data-driven advertising strategies that encompass all of the technology and intelligence necessary to execute effective global advertisement campaigns.  The Debtors are headquartered in New York, New York, with operations and assets in the United States and abroad.  As of the Petition Date (as defined herein), the Debtors have approximately $172 million of funded indebtedness.

6.      On March 29, 2019, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these chapter 11 cases.  Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to these chapter 11 filings is contained in the First Day Declaration.

138472731_392525-00001

## II.   Summary of the Debtors' Prepetition Indebtedness.[4]

7.     As of the Petition Date, the Debtors have approximately $172 million of prepetition funded indebtedness pursuant to the Financing Agreements, by and among the Borrower, the Secured Lenders, the Agent, (and in the case of the Second Lien Financing Agreement, the Second Lien Agent) and the Guarantors.  The Prepetition Indebtedness comprises term loans, a revolving line of credit, and payment-in-kind interest ("PIK Interest") and is secured by substantially all of the Debtors' assets.  As of the Petition Date, there was approximately $133,125,000.00 outstanding term loan principal and $23,933,755.96 outstanding balance on the revolver facility under the First Lien Financing Agreement, $15,000,000.00 under the Second Lien Financing Agreement, and $6,323,107.07 under the Third Lien Financing Agreement.[5]

### The Debtors' Cash Collateral and Proposed Form of Adequate Protection

8.     The proposed immediate use of the Cash Collateral is intended to allow the Debtors to (a) satisfy their prepetition Payroll Obligations (and not in excess of the $12,850 priority wage cap imposed by sections 507(a)(4) and 507(c)(5) of the Bankruptcy Code) and up to an aggregate cap of $1,500,000 and (b) provide for the immediate working capital needs of the Debtors while the Debtors operate in chapter 11 pending the Final Hearing.  Without prompt access to Cash Collateral, the Debtors are unable to satisfy their Payroll Obligations and will likely be unable to

---

[4]   The descriptions of the Debtors' prepetition debt and the collateral securing their prepetition debt provided herein does not constitute, and should not be construed as, an admission by the Debtors regarding the validity, priority, or enforceability of any liens and security interests granted in connection therewith, and the Debtors reserve all rights to challenge or dispute any of the foregoing on any basis whatsoever, subject to all the provisions of the Interim Order or Final Order, as applicable.  Capitalized terms used within this summary of lenders with liens on Cash Collateral but not otherwise defined herein shall have the meanings set forth in the Interim Order.

[5]   In addition, the Debtors routinely transact with a number of third-party contractors and vendors that (a) may be able to assert liens under applicable non-bankruptcy law against the Debtors and their assets if the Debtors fail to pay for the goods delivered or services rendered, who may have valid liens under applicable non-bankruptcy law, and would be able to assert secured claims against the Debtors; and (b) may be able to assert general unsecured claims against the Debtors.

4

satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, and administer these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

### Concise Statement of the Material Terms of the Interim Order

9.     Pursuant to and in accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2(a), the material provisions of the Interim Order, and the location of such provisions therein are summarized below.[6]

| Material Terms | Summary of Material Terms | Location |
|---|---|---|
| **Parties with Interest in Cash Collateral.** Fed. R. Bankr. P. 4001(b)(1)(B)(i) | The Prepetition Secured Parties (as defined in the First Day Declaration).[7] | ¶ D, 3 |
| **Interim Use of Cash Collateral.** Fed. R. Bankr. P. 4001(b)(1)(B)(ii), (iii) | The Debtors have an immediate need to use Cash Collateral to permit, among other things, payment of the Payroll Obligations and the orderly continuation of the operation of their businesses, and to avoid irreparable harm. The Debtors did not and do not have sufficient available sources of working capital and financing to meet the Payroll Obligations and carry on the operation of their businesses without the Debtors' continued ability to use Cash Collateral. Among other things, entry of the Interim Order will minimize disruption of the Debtors' businesses and operations and prevent immediate and irreparable harm to their businesses. The Debtors shall be authorized to use the Cash Collateral pending entry of the Final Order. | ¶¶ B, F |
| **Adequate Protection** Fed. Bankr. R. P. 4001(b)(1)(B)(iv) **Economic Terms Including Fees and Expenses of the Lenders,** | <u>Secured Parties' Adequate Protection Package</u>. The adequate protection package provided to the Secured Parties includes:<br><br>• the Adequate Protection Liens, including a first priority lien on and security interest in unencumbered property, a junior lien on all encumbered property that is not Prepetition Collateral, and a priming lien on and security interest in all Prepetition Collateral; | ¶¶ 5, 6 |

---

[6]    This summary is qualified in its entirety by the provisions of the Interim Order. To the extent there are any conflicts between this summary and the Interim Order, the terms of the Interim Order shall govern. Unless otherwise defined herein, capitalized terms used in this section have the meanings given to them in the Interim Order.

[7]    Adequate protection is not being offered to the Second Lien Lenders (as defined in the First Day Declaration).

138472731_392525-00001

| Material Terms | Summary of Material Terms | Location |
|---|---|---|
| **Agents, and Their Respective Professionals**<br><br>S.D.N.Y. Bankr. L.R. 4001-2(a)(3) | • a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code; and<br>• payment of all reasonable and documented fees and disbursements incurred by the professionals retained by the Secured Parties. | |
| **Amount of Cash Collateral to be Used**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii)<br><br>S.D.N.Y. Bankr. L.R. 4001-2(a)(1), (c) | Subject to the terms of the Interim Order, the Debtors may use all Cash Collateral in which the Secured Parties may have an interest, but only subject to the Budget. Any dispute in connection with the use of Cash Collateral shall be heard by the Bankruptcy Court. Notwithstanding anything in the Interim Order to the contrary, the Debtors shall be immediately prohibited from using the Cash Collateral upon the Cash Collateral Termination Date. | ¶ 3 |
| **Material Conditions to Closing and Borrowing, Including Budget Provisions**<br><br>S.D.N.Y. Bankr. L.R. 4001-2(a)(2) | The Budget. All use of Cash Collateral by the Debtors shall be pursuant to a budget approved by Cerberus (as approved, the "Budget"). The proposed Budget is attached to the Interim Order as **Exhibit A**. The Debtors have reason to believe that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. | ¶ 3 |
| **Effect On the Existing Liens**<br><br>S.D.N.Y. Bankr. L.R. 4001-2(a)(4) | Priority of Adequate Protections Liens. Except as provided in the Interim Order, the Adequate Protection Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code. | ¶ 6 |
| **Carve-Out**<br><br>S.D.N.Y. Bankr. L.R. 4001-2(a)(5) | The Interim Order provides a "Carve-Out" of certain statutory fees, allowed professional fees of the Debtors, and any Creditors' Committee appointed in the chapter 11 cases pursuant to section 1102 of the Bankruptcy Code, including a Post-Carve-Out Trigger Notice Cap, all as detailed in the Interim Order and Budget. | ¶ 4 |

6

| Material Terms | Summary of Material Terms | Location |
|---|---|---|
| **Limitation on Enforcement Actions** S.D.N.Y. Bankr. L.R. 4001-2(a)(8), (a)(9) | The Interim Order prohibits the use of Cash Collateral for the purposes of: (a) requesting authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of Bankruptcy Code, or otherwise; (b) prosecuting or supporting any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Financing Agreements anywhere in the world; or (c) paying any claim of a prepetition creditor except as expressly allowed by the Interim Order or other order of the Bankruptcy Court.<br><br>The Interim Order also allows for a $25,000 to be used by a Creditors' Committee appointed in the cases to investigate claims against the Secured Parties but prohibits any prosecution of any actions related thereto. | ¶¶ 9, 10 |
| **Funding of Non-Debtor Affiliates** S.D.N.Y. Bankr. L.R. 4001-2(a)(15) | The Debtor's Israeli affiliate Sizmek Technologies Ltd. will receive approximately $1,500,000 of the Cash Collateral in order to fund payroll and social security payments. The Debtors believe that payment of these amounts is necessary to preserve the value of their estates by avoiding liquidation of an entity that owns intellectual property used by the Debtors and as to which a Debtor entity has a claim on residual value through an intercompany note. | Budget |

## The Debtors' Need to Use Cash Collateral

10.    On the Petition Date, the Debtors' cash on hand totaled approximately $3,930,000, all of which constituted Cash Collateral of the Secured Parties.  The Debtors engaged with the Secured Lenders regarding the terms on which they would consent to permit the Debtors to continue to use Cash Collateral.  These discussions resulted in the proposed Interim Order, entry of which will allow the Debtors to transition smoothly into chapter 11 while continuing to operate their businesses without disruption.

## Summary of Proposed Use of Cash Collateral

11.    Pursuant to the Interim Order, the Debtors' right to use Cash Collateral will commence on the date of entry of the Interim Order and shall remain in effect until the earlier of (a) 45 days after the Petition Date (unless such period is extended by mutual agreement of Cerberus

and the Debtors), if the Final Order has not been entered on or before such date, and (b) the occurrence of any Termination Event set forth in the Interim Order.

12.      Immediate access to Cash Collateral will provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and ongoing operations, (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors and their creditors, businesses, employees, and assets.  If the Debtors are unable to access Cash Collateral to meet their obligations on a timely basis, the Debtors could suffer permanent harm.

<u>Basis for Relief</u>

**I.      The Use of Cash Collateral Is Warranted and Should Be Approved**

13.      Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

14.      Here, the Secured Parties have consented to the Debtors' use of Cash Collateral on the terms and conditions set forth in the Interim Order.  Accordingly, the Debtors submit that the use of Cash Collateral satisfies the requirements of section 363(c)(2) of the Bankruptcy Code.

**II.      The Debtors' Proposed Adequate Protection is Appropriate**

15.      Section 363(c)(2) of the Bankruptcy Code provides that, absent consent, a debtor may use cash collateral where "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2)(A), (B). Section 363(e) of the Bankruptcy Code requires that the debtor adequately protect the secured creditors' interest in property to be used by a debtor against any diminution in value of such interest

8

resulting from the debtor's use of the property during the chapter 11 proceedings. 11 U.S.C. § 363(e).

16.     The essential purpose of adequate protection is to protect against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession.  *See Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010) ("Adequate protection is generally defined as a method by which a secured creditor may apply to the Bankruptcy Court to protect its interest in the diminution in value of its security during a bankruptcy proceeding." (internal quotation marks omitted)); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."); *In re Carbone Cos., Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral." (citation omitted)).   "However, neither the legislative history nor the Bankruptcy Code requires the Bankruptcy Court to protect a creditor beyond what was bargained for by the parties." *WorldCom, Inc.*, 304 B.R. at 619; *see In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) ("Adequate protection, not absolute protection, is the statutory standard.").

17.     Generally, what constitutes sufficient adequate protection is decided on a case-by-case basis.  *See, e.g.*, *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804 (HSB), 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Monroe Park*, 17 B.R. 934 (D. Del. 1982) (noting that adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral pending the outcome of the bankruptcy proceedings); *see also In re*

*Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. at 289; *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992). Adequate protection can come in various forms, including the payment of adequate protection fees, payment of interest, and granting of replacement liens.

18.    As described above, the Debtors have obtained the consent of the Secured Parties to continue to use Cash Collateral, in accordance with the Budget and subject to the terms and conditions of the Interim Order. A critical condition of that agreement with the Secured Parties is the Debtors' agreement to provide the Secured Parties with the proposed adequate protection package, which is consistent with the forms of adequate protection contemplated by the Bankruptcy Code.

19.    Accordingly, the Debtors submit that the adequate protection proposed for the benefit of the Secured Parties is necessary and appropriate and satisfies the standards under section 363(c)(2) of the Bankruptcy Code. Courts in this district and others have granted similar relief in other chapter 11 cases. *See*, *e.g.*, *In re Answers Holdings Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 5, 2017); *In re Sabine Oil & Gas Corp.*, No 15-11185 (SCC) (Bankr. S.D.N.Y. July 17, 2015); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 3, 2013); *In re Citadel Broad. Corp.*, No. 09-17442 (Bankr. S.D.N.Y. Mar. 3, 2010); *In re Reader's Digest Ass'n, Inc.*, No. 09-23529 (Bankr. S.D.N.Y. Oct. 6, 2009); *In re Extended Stay Inc.*, No. 09-13764 (Bankr. S.D.N.Y. July 23, 2009); *In re ION Media Networks, Inc.*, No. 09-13125 (Bankr. S.D.N.Y June 2, 2009); *In re Gen. Growth Props., Inc.*, No. 09-11977 (Bankr. S.D.N.Y. May 14, 2009).[8]

---

[8]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

138472731_392525-00001

### III.      The Automatic Stay Should Be Modified on a Limited Basis

20.      The Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified as necessary to effectuate the terms and provisions of the Interim Order.  The Interim Order further provides that the automatic stay is modified and vacated to the extent necessary, upon the occurrence of the Cash Collateral Termination Date, to permit the Adequate Protection Obligations to become immediately due and payable and, after the seven-day period required by the Local Rules, to allow the Secured Parties to exercise the rights and remedies available under the Financing Agreements, the Interim Order, or applicable law, including foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.

21.      The Debtors have determined, in an exercise of their business judgment that such stay modifications are appropriate under the circumstances, in the context of a negotiated consensual cash collateral order.  Further, stay modifications of this kind are ordinary, and are reasonable and fair under the circumstances of these chapter 11 cases.  Courts in this district have granted similar relief in other chapter 11 cases.  *See*, *e.g.*, *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 1, 2012); *In re Velo Holdings Inc.*, No. 12-11384 (MG) (Bankr. S.D.N.Y. Apr. 23, 2012); *In re United Retail Grp., Inc.*, No. 12-10405 (SMB) (Bankr. S.D.N.Y. Feb. 23, 2012); *In re Hostess Brands, Inc.*, No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 11, 2011); *In re Reader's Digest Assoc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Oct. 6, 2009), *In re Lear Corp.*, No. 14326 (ALG) (Bankr. S.D.N.Y. Aug. 4, 2009); *In re Gen. Growth Props. Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 14, 2009); *In re Tronox Inc.*, No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 6, 2009); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. April 23, 2009); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2008).

## Request for Final Hearing

22.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Bankruptcy Court, set a date for the Final Hearing that is as soon as practicable, but in no event later than 25 days following the entry of the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## Motion Practice

23.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

24.     To implement the foregoing successfully, the Debtors request that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

25.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the Southern District of New York Attn: Richard C. Morrisey, Esq; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition Secured Parties; (d) the Pension Benefit Guaranty Corporation; (e) the United States Attorney's Office for the Southern District of New York; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and all similar state environmental agencies; (i) the attorneys general in the states where the Debtors conducts their business operations; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

138472731_392525-00001

The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

26.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated:  April 2, 2019            */s/ Steven J. Reisman*
New York, New York           **KATTEN MUCHIN ROSENMAN LLP**
                             Steven J. Reisman, Esq.
                             Cindi M. Giglio, Esq.
                             Jerry L. Hall, Esq. (*pro hac vice* forthcoming)
                             575 Madison Avenue
                             New York, NY 10022
                             Telephone: (212) 940-8800
                             Facsimile:  (212) 940-8876
                             Email:      sreisman@kattenlaw.com
                                         cindi.giglio@kattenlaw.com
                                         jerry.hall@kattenlaw.com

                             -and-

                             Peter A. Siddiqui, Esq. (*pro hac vice* forthcoming)
                             Katten Muchin Rosenman LLP
                             525 W. Monroe Street
                             Chicago, IL 60661
                             Telephone: (312) 902-5455
                             Email:      peter.siddiqui@kattenlaw.com

                             *Proposed Counsel to the Debtors and Debtors-in-Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SIZMEK INC., *et al.*,[1] | ) | Case No. 19-10971 (SMB) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## INTERIM ORDER
### (I) AUTHORIZING THE DEBTORS TO
### USE CASH COLLATERAL PURSUANT TO
### 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE
### PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 507, AND
### SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, and Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules, and the Local Rules, for entry of this Interim Order and entry of a Final Order by the Bankruptcy Court:

(i)      authorizing the Debtors to use Cash Collateral on the terms set forth in this Interim Order;

(ii)      granting adequate protection as set forth in this Interim Order;

(iii)      modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iv)      waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004)

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sizmek Inc. (4624); Sizmek DSP, Inc. (2319); Point Roll, Inc. (3173); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914).   The location of the Debtors' service address for purposes of these chapter 11 cases is:  401 Park Avenue South, Fifth Floor, New York, NY 10016.

[2]      Capitalized terms used and not immediately defined herein have the meanings given to them in the Motion or the Bankruptcy Code, as applicable.

and provision for immediate effectiveness of this Interim Order;

(v)    authorizing the Debtors to use Cash Collateral during the period commencing on the date of the Bankruptcy Court's entry of this Interim Order and ending on the earlier of (a) the date the Bankruptcy Court enters the Final Order and (b) the date on which the Debtors' right to use Cash Collateral terminates under the terms of this Interim Order;

(vi)    scheduling an interim hearing (the "Interim Hearing"), pursuant to Bankruptcy Rule 4001, to consider entry of this Interim Order; and

(vii)    scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis;

The Interim Hearing on the Motion having been held on April [___], 2019; and based upon all of the pleadings filed with the Bankruptcy Court, the evidence presented at the Interim Hearing and the entire record herein; and the Bankruptcy Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Bankruptcy Court having noted the appearances of all parties-in-interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors, and other parties-in-interest; and the Debtors having provided sufficient notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    Jurisdiction; Venue.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated February 1, 2012.  The Debtors have confirmed their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final

2

order by the Bankruptcy Court in connection with the Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules.

B.      Irreparable Harm.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and the Debtors' estates as more fully set forth below.

C.      Cash Collateral.  The Debtors require the use of Cash Collateral to operate their businesses and pay certain prepetition obligations, including, obligations related to wages and medical benefits (collectively, the "Payroll Obligations").  Without the use of Cash Collateral, the Debtors will not be able to meet the Payroll Obligations or satisfy their working capital needs, and an immediate shutdown of the Debtors' businesses is likely to result.

D.      Secured Parties.  The Debtors acknowledge and agree that, as of the Petition Date, the Debtors were parties to that certain Financing Agreement, dated as of September 6, 2017 (as subsequently amended from time to time, the "Financing Agreement") with Cerberus Business Finance, LLC ("Cerberus"), as administrative agent and collateral agent for certain revolver and term loan lenders (the "Senior Lenders") that are secured by first-priority liens on substantially all of the Debtors' assets (the "Prepetition Liens" on the "Prepetition Collateral"). The Senior Lenders and Cerberus are collectively referred to herein as the "Secured Parties."

E.      Adequate Protection.  The Adequate Protection Obligations (as defined below) are sufficient to protect the interests of the Secured Parties in the Prepetition Collateral and no further

3

adequate protection is presently required under sections 361 or 363, or any other provision of the Bankruptcy Code.

F.    <u>Immediate Entry of Interim Order</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), upon notice provided as set forth in the Motion, which is, in the Debtors' belief, the best available under the circumstances.  The permission granted herein to utilize Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  The Debtors have an immediate need to use Cash Collateral to permit, among other things, the satisfaction of the Payroll Obligations and the orderly continuation of the operation of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Debtors' continued ability to use Cash Collateral.  Among other things, entry of the Order will minimize disruption of the Debtors' businesses and operations and permit them to pay their operating expenses, subject to the Budget, including, without limitation, to retain their employees, maintain business relationships with their vendors, and maintain customer and vendor confidence by demonstrating an ability to maintain operations.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Bankruptcy Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.    <u>Disposition</u>.  The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled,

138461432_392525-00001

or resolved and all reservations of rights included therein are hereby denied and overruled on their merits, but without prejudice to relief that may be granted on a final basis.

2.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact (subject to the terms set forth herein) and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rule 4001(a)(3) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

3.    <u>Authorization to Use Cash Collateral</u>.

(a)    Subject to the terms of this Interim Order and the Budget (as defined below), the Debtors are authorized to use all Cash Collateral in which the Secured Parties may have an interest.  Any dispute in connection with the use of Cash Collateral shall be heard by the Bankruptcy Court.  Notwithstanding anything in this Interim Order to the contrary, the Debtors shall be immediately prohibited from using Cash Collateral upon the Cash Collateral Termination Date.

(b)    All use of Cash Collateral by the Debtors pursuant to the terms of this Interim Order must be pursuant to a budget approved by Cerberus (as approved, the "<u>Budget</u>").  From entry of this Interim Order, the Budget, attached hereto as **<u>Exhibit A</u>**, shall govern the Debtors' use of Cash Collateral, provided, that the Debtors shall be in compliance with the Budget so long as the Debtors' total disbursements do not exceed the total budgeted disbursements from the Budget by more than 5% as calculated on a cumulative basis. The Debtors have reason to

believe that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

(c) While this Interim Order remains in effect, (i) the Debtors shall continue to deposit all collections, receipts, and other Cash Collateral in deposit accounts that are subject to deposit account control agreements in favor of Cerberus, (ii) all Cash Collateral deposited in such accounts shall remain subject to a daily "sweep" by Cerberus, and (iii) notwithstanding any such "sweep," (X) Cash Collateral shall be turned over and made available for use by the Debtors in accordance with the terms and conditions of this Interim Order and (Y) none of the swept funds will be applied to satisfaction of any prepetition obligation under the Financing Agreement absent a further order of the Court. The Debtors will not use any funds made available to them except as specified in the Budget. For avoidance of doubt, Cerberus shall not be permitted to conduct a "sweep" of any accounts which are not pledged as collateral for the Financing Agreement.

(d) During the period in which this Interim Order is in effect, the Debtors shall segregate the Cash Collateral attributable to or arising from the Prepetition Collateral, and such Cash Collateral shall not be commingled with assets or collateral of any party which is not a Debtor and shall at all times be subject to the liens and control of the Secured Parties.

4.    <u>Carve-Out</u>.

(a) As used in this Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code together with

6

interest, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees, commissions, and expenses up to $50,000 incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") at any time before or on the first business day following delivery of a Carve Out Trigger Notice (as defined below), but, for the avoidance of doubt, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice, but only up to an aggregate amount of the fees and expenses set forth in the Budget for the period through the Date of the Carve Out Trigger Notice *less* the amount of such fees and expenses for such period that have already been paid; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by Cerberus of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the aggregate amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by Cerberus to the Debtors, their lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon termination of the Debtors' right to

7

use Cash Collateral by the Secured Parties, stating that the Post-Carve Out Trigger

Notice Cap has been invoked.

(b)      Carve-Out Reserves.  On the day on which a Carve Out Trigger

Notice is given by Cerberus pursuant to the preceding subparagraph (the

"Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a

demand to the Debtors to utilize all cash on hand as of such date and any available

cash thereafter held by any Debtor to fund a reserve in an amount equal to the then

amounts of the Allowed Professional Fees set forth in the Budget for the period

through the Date of the Carve Out Trigger Notice *less* the amount of such fees and

expenses for such period that have already been paid.  The Debtors shall deposit

and hold such amounts in a segregated account in trust to pay such then unpaid

Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to

any and all other claims.  On the Termination Declaration Date, after funding the

Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash

on hand as of such date and any available cash thereafter held by any Debtor to

fund a reserve in an amount equal to the $200,000 Post-Carve Out Trigger Notice

Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-

Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all

other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used

first to pay the obligations set forth in clauses (i) through (iii) of the  definition of

Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the

avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and

then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced

8

to zero, to pay Cerberus for the benefit of the Secured Parties, unless the obligations under the Financing Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post Carve Out Trigger Notice Reserve has not been reduced to zero, to pay Cerberus for the benefit of the Secured Parties, unless all amounts owed under the Financing Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(c)      No Direct Obligation To Pay Allowed Professional Fees.  None of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these chapter 11 cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)      Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

138461432_392525-00001

5.    <u>Adequate Protection for Secured Parties</u>.  The Secured Parties are hereby granted the following protections pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code or otherwise, with respect to the Prepetition Liens for the consent of such Secured Parties to the use of their Prepetition Collateral (including Cash Collateral) and as adequate protection for the diminution in value of the Prepetition Collateral (the "<u>Diminution in Value</u>"), whether or not such Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition Collateral (including, without limitation, Cash Collateral) or the stay of enforcement of any prepetition security interest arising from section 362 of the Bankruptcy Code, or otherwise (the items set forth in clauses (a) through (c) below shall be referred to collectively as the "<u>Adequate Protection Obligations</u>"):

(a)    <u>Adequate Protection Liens</u>.  Cerberus on behalf of the Secured Parties is granted, solely to the extent of any Diminution in Value, effective and perfected as of the date of this Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, perfected, postpetition security interests in and liens (together, the "<u>Adequate Protection Liens</u>") on all of the property, assets or interests in property or assets of each Debtor, each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery

10

and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each subsidiary of such Debtor, all of the capital stock of all other entities that are not subsidiaries directly owned by such Debtor, money, investment property, deposit accounts, all commercial tort claims and other causes of action (including any and all actions arising under the Bankruptcy Code), Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above; <u>provided</u> that any liens on proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code shall be subject to entry of the Final Order (collectively, with respect to all such entities, the "Adequate Protection Collateral"), as follows:

    i.    a first priority, perfected priming security interest in and lien under sections 361(2) and 363(c)(2) of the Bankruptcy Code upon all Adequate Protection Collateral that also constitutes Prepetition Collateral, in all cases senior to the Prepetition Liens as well as all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Prepetition Liens; and

    ii.    a junior lien, under sections 361(2) and 363(c)(2) of the Bankruptcy Code upon all of the Adequate Protection Collateral of each Debtor and of each Debtor's estate that is, as of the Petition Date subject to valid, perfected, and non-avoidable liens in favor of third parties that are senior in priority to the Secured Parties' prepetition liens and interests in the applicable Prepetition Collateral (the "Prior Liens").

(b)    Superpriority Claim. Cerberus on behalf of the Secured Parties is granted, for the reasons set forth above in this paragraph 5, solely to the extent of any Diminution in Value, subject to the Carve-Out, a superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 507(b) of the

138461432_392525-00001

Bankruptcy Code, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. Except as expressly set forth herein, no other superpriority claims shall be granted or allowed in these chapter 11 cases.

(c)      As further compensation for the consensual use of the Prepetition Collateral, including Cash Collateral, by the Debtors for the reasons set forth above in this paragraph 5, and in accordance with sections 361 and 363 of the Bankruptcy Code, the respective professional identified below shall receive from the Debtors current cash payments of all reasonable and documented fees and disbursements of professionals retained by the Secured Parties, in each case promptly upon receipt of summary form invoices and without the need for such professional to file any fee statement or application with the Bankruptcy Court or provide detailed time entries to the Debtors or any other party; provided that all such payments shall be subject to recharacterization to the extent permitted by the Bankruptcy Code.

(d)      Reservation of Rights.  Notwithstanding any other provision hereof to the contrary, the grant of Adequate Protection Obligations to the Secured Parties pursuant hereto is without prejudice to the right of the Secured Parties to seek

12

different or additional adequate protection, including without limitation the current payment of postpetition interest (at the applicable default rate), to seek payments under section 506(b) of the Bankruptcy Code when this Interim Order or the Final Order, as applicable, is no longer in effect, or to withdraw their consent to any further use of Cash Collateral.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law.  Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties.  Nothing in this Interim Order shall constitute an admission that the Secured Parties are not entitled to payment or allowance of claims under section 506(b) of the Bankruptcy Code.

6.     <u>Additional Provisions Regarding the Adequate Protection Obligations</u>.

(a)     The Adequate Protection Liens shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), including property or assets, if any, that does not secure the Prepetition Indebtedness.

(b)     Except as provided in this Interim Order, the Adequate Protection Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise

13

or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(c)     Subject to entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting Cerberus, for the benefit of the Secured Lenders, a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors.

(d)     Unless expressly provided otherwise herein, the Adequate Protection Liens, Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the Secured Parties, shall continue in these chapter 11 cases, in any superseding case or cases under the Bankruptcy Code (including without limitation any case under chapter 7 of the Bankruptcy Code) (a "Superseding Case"), and following any dismissal of the chapter 11 cases, and such liens and claims shall maintain their priority as provided in this Interim Order until all Adequate Protection Obligations been indefeasibly paid in full in cash and completely satisfied.

14

(e)     All reasonable and documented fees paid and payable, and costs or expenses reimbursed or reimbursable by the Debtors to the Secured Parties are hereby approved.  The Debtors are hereby authorized and directed to promptly pay all such reasonable and documented fees, costs, and out-of-pocket expenses on demand, without the necessity of any further application with the Bankruptcy Court for approval or payment of such fees, costs or expenses; <u>provided</u> that any unresolved objections raised with respect to the reasonableness of such fees and out-of-pocket expenses shall be subject to resolution by the Bankruptcy Court.

(f)     Notwithstanding anything to the contrary herein, the reasonable and documented fees, costs and out-of-pocket expenses of the Secured Parties, whether incurred prior to or after the Petition Date, shall be deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the date of this Interim Order.  All unpaid fees, costs, and expenses shall be included and constitute part of the Superpriority Claims and be secured by the Adequate Protection Liens.

7.     Perfection of Adequate Protection Liens.

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle Cerberus and the other Secured Parties to the priorities granted herein.

15

(b)    Without limiting the foregoing subparagraph, the Secured Parties

are hereby authorized, but not required, to file or record financing statements,

trademark filings, copyright filings, mortgages, notices of lien or similar

instruments in any jurisdiction, or take possession of or control over, or take any

other action in order to validate and perfect the liens and security interests granted

to them hereunder, in each case without the necessity to pay any mortgage

recording fee or similar fee or tax. Whether or not the Secured Parties shall, in their

sole discretion, choose to file such financing statements, trademark filings,

copyright filings, mortgages, notices of lien or similar instruments, or take

possession of or control over, or otherwise confirm perfection of the liens and

security interests granted to it hereunder, such liens and security interests shall be

deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to

challenge dispute or subordination (except as specified herein), at the time and on

the date of entry of this Interim Order.  The Debtors shall, if requested, execute and

deliver to the Secured Parties all such agreements, financing statements,

instruments and other documents as the Secured Parties may reasonably request to

more fully evidence, confirm, validate, perfect, preserve, and enforce the Adequate

Protection Liens.  All such documents will be deemed to have been recorded and

filed as of the Petition Date.

(c)    A certified copy of this Interim Order may, in the discretion of

the Secured Parties, be filed with or recorded in filing or recording offices in

addition to or in lieu of such financing statements, mortgages, notices of lien, or

138461432_392525-00001

similar instruments, and all filing offices are hereby directed to accept such certified

copy of this Interim Order for filing and recording.

8.  <u>Termination Events</u>.

      (a)    The occurrence and continuance of any of the following events,

unless waived by Cerberus in writing shall constitute a termination event with

respect to the Debtors' right to use the Cash Collateral pursuant to this Interim

Order (the events set forth in clauses (i) through (xv) below are collectively referred

to herein as the "<u>Termination Events</u>"):

    i.    the Final Order has not been entered by the Bankruptcy Court within forty-five days after the Petition Date, unless such period has been extended by mutual agreement of Cerberus and the Debtors;

    ii.    failure of the Debtors to file, on or before April 12, 2019, a motion to approve one or more section 363 sale transactions (which, in the aggregate, encompass substantially all of the Debtors' assets) and associated bid procedures acceptable to Cerberus, which motion must be accompanied by (X) executed asset purchase agreements with the proposed "stalking horse" bidders and (Y) cash deposits from such bidders in amounts acceptable to Cerberus in its sole and absolute discretion; *provided, however*, that Cerberus may agree, in its sole and absolute discretion, to vary any of the preceding requirements, including, without limitation, in the event the Debtors arrange for a binding sale of one or more of the Debtors' business segments;

    iii.    failure of the Debtors to make any payment required under this Interim Order after such payment becomes due under the terms hereof;

    iv.    failure of the Debtors to comply in any material respect with any covenant, agreement, or provision of this Interim Order;

    v.    an order is entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order, or that has the effect of any of the foregoing, without the advance written consent of Cerberus;

    vi.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order dismissing any of these chapter 11 cases;

vii.     the Bankruptcy Court (or any court of competent jurisdiction) enters an order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

viii.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in these chapter 11 cases;

ix.      any Debtor uses Cash Collateral to fund any payments in respect of prepetition or post-petition claims other than (i) as permitted under this Interim Order or any other order of the Bankruptcy Court; or (ii) as otherwise expressly contemplated by the Budget or an order consented to by Cerberus; or

x.       the Bankruptcy Court (or any court of competent jurisdiction) enters an order terminating the use of Cash Collateral.

(b)     <u>Remedies upon the Cash Collateral Termination Date</u>.  The Debtors

shall promptly provide notice to Cerberus (with a copy to counsel for the U.S.

Trustee and any official committee) of the occurrence of any Termination Event.

The Debtors' right to use Cash Collateral pursuant to this Interim Order shall

automatically terminate on the date that is the second business day following the

delivery of a written notice (any such notice, a "<u>Cash Collateral Termination</u>

<u>Notice</u>," any such two-day period of time following delivery of a Cash Collateral

Termination Notice, the "<u>Default Notice Period</u>," and the date following the

Default Notice Period, the "<u>Cash Collateral Termination Date</u>") by Cerberus to the

Debtors, counsel for the U.S. Trustee, and any official committee of the occurrence

of any Termination Event unless such occurrence is cured by the Debtors prior to

the expiration of the Default Notice Period with respect to such clause or such

occurrence is waived by the Secured Lenders in their reasonable discretion,

<u>provided further</u> that, (X) during the Default Notice Period, the Debtors shall be

entitled to continue to use the Cash Collateral in accordance with the terms of this

Interim Order; (Y) in the case of Termination Events described in clauses ii, v, vi, vii and viii above, the termination shall automatically occur on the occurrence of the event described in the applicable clause without any requirement of notice from Cerberus or the running of a Default Notice Period; and (Z) nothing contained herein shall prohibit or restrict the Debtors from seeking further relief from the Bankruptcy Court regarding the use of Cash Collateral following the delivery of any Cash Collateral Termination Notice.  Upon the Cash Collateral Termination Date: (a) the Debtors' right to use Cash Collateral (other than the Carve-Out in accordance with paragraph 4 hereof) shall terminate, (b) the Adequate Protection Obligations, if any, shall become immediately due and payable, and (c) Cerberus and the other Secured Parties may, within seven calendar days after occurrence of the Cash Collateral Termination Date and in each case subject to the Carve-Out, exercise the rights and remedies available under the Financing Agreements, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary or appropriate to permit such actions.  Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Secured Parties under this Interim Order shall survive the Cash Collateral Termination Date.

(c)      If a Termination Event occurs because the Debtors fail to meet the milestone set forth in paragraph 8(a)(ii), then (i) the Debtors shall immediately

19

begin to implement an orderly wind down of all of their affairs and (ii) the Debtors and Cerberus shall negotiate in good faith regarding a further budget and cash collateral order to govern such wind-down process.

9.      <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, no Adequate Protection Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, their estates, any affiliate of the Debtors, any creditors' committee, any trustee or examiner appointed in these chapter 11 cases or any chapter 7 trustee, or any other person, party or entity to, directly or indirectly, (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of Bankruptcy Code, or otherwise; (b) prosecute or support any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Financing Agreements anywhere in the world; or (c) pay any claim of a prepetition creditor except as expressly allowed by this Interim Order or other order of the Bankruptcy Court.

10.     <u>Investigation Period</u>.  Notwithstanding anything herein to the contrary, until the day that is 75 days from the date of the entry of the Final Order (as such date may be extended by Cerberus or by the Bankruptcy Court for cause shown, the "<u>Investigation Termination Date</u>")[3], the creditors' committee, if any, or any other party in interest shall be entitled to investigate the liens

---

[3]     If the Final Order is not entered, then the Investigation Termination Date shall be the sixtieth calendar day after the entry of this Interim Order.

138461432_392525-00001

and claims of and claims against the Secured Parties;[4] provided, however, that the creditors' committee, if any, may use up to $25,000 of the Cash Collateral (the "Investigation Fund") for such investigation.  Any claim incurred in connection with any activities described in this paragraph 10 shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.  Any assertion of claims or causes of action of the Debtors or their estates against any of the Secured Parties by any party in interest must be made by commencing an adversary proceeding or contested matter on or before the Investigation Termination Date.  If no such action is filed on or before the Investigation Termination Date, then all persons and entities shall be forever barred from bringing or taking such action.

11.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before the Bankruptcy Court.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law. The rights of the Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Secured Parties' rights under the Financing Agreement and all related documents; (b) the Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) any of the Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Parties.

---

[4]    Nothing herein shall be interpreted as conferring on any person or entity standing to pursue any claim, cause of action or take any action on behalf of the Debtors or their respective estates.

138461432_392525-00001

12.     <u>Extension of Budget</u>.   If the Debtors timely satisfy the milestone set forth in paragraph 8(a)(ii) and provide Cerberus with a two-week budget acceptable to Cerberus in its sole and absolute discretion on or before the expiration of the Budget, then such two-week budget shall become operative and shall govern the Debtors use of Cash Collateral for the period covered by such budget pursuant to the terms and conditions of this Interim Order.  If such two-week budget becomes operative, the Debtors shall promptly file notice of same.

13.     <u>Priority of Terms</u>.   To the extent of any conflict between or among (a) the express terms or provisions of any of the Motion, any other order of the Bankruptcy Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" such other document, the terms and provisions of this Interim Order shall govern. To the extent there is any inconsistency between this Interim Order and any order concerning the Debtors' cash management systems or bank accounts or any other "first day" relief, this Interim Order shall control.

14.     <u>No Third Party Beneficiary</u>.   Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

15.     <u>Headings</u>.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

16.     <u>Final Hearing Date.</u>   The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on [●], 2019 at [●:●] a.m. before the Honorable Stuart M. Bernstein at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Manhattan, NY 10004.

22

17.    <u>Adequate Notice</u>.  The notice given by the Debtors of the Interim Hearing was given

in accordance with Bankruptcy Rules 2002 and 4001(b)(3), and the Local Bankruptcy Rules, and

was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief

granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim

Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms

of the Final Order, and any other entity requesting notice after the entry of this Interim Order.

Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with

particularity the grounds thereof, and filed with the Bankruptcy Court and served so as to be

<u>actually received</u> no later than 7 days prior to the Final Hearing by the following: (i) the Debtors,

401 Park Avenue South, Fifth Floor, New York, NY 10016, Attn: George Pappachen; (ii) proposed

counsel to the Debtors, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New

York, 10022, Attn: Steven J. Reisman, Katten Muchin Rosenman LLP, 525 W. Monroe Street,

Chicago, IL 60661-3693, Attn: Peter A. Siddiqui; (iii) counsel to Cerberus: Thomas E. Patterson

& David A. Fidler, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor,

Los Angeles, California 90067; (iv) counsel to the official committee of unsecured creditors, if

any; (vi)  the Office of the United States Trustee for Southern District of New York, Region 2, 201

Varick Street, Room 1006, New York, NY 10014, Attn: Richard Morrissey; and (ix) any party that

has requested notice pursuant to Bankruptcy Rule 2002, and shall be filed with the Clerk of

the Bankruptcy Court.

18.    <u>Binding Effect; Successors and Assigns</u>.  Except as expressly provided herein, the

provisions of this Interim Order, including all findings herein, shall be binding upon all

parties-in-interest in these chapter 11 cases, including, without limitation, the Secured Parties, any

creditors' committee or examiner appointed in these chapter 11 cases, and the Debtors, and their

respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor) whether in these chapter 11 cases, in any successor cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the Secured Parties and their respective successors and assigns.  Each admission and agreement contained in this Interim Order shall also be binding upon all other parties-in-interest, including, any creditors' committee, under all circumstances and for all purposes.  No obligation, payment, transfer, or grant of security to the Secured Parties under this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

19.    <u>The Debtors' Intention to Seek Certain Waivers</u>.  In connection with entry of the Final Order, the Debtors intend to seek (i) full and final waivers by the Debtors and their estates of any claim or right under Bankruptcy Code section 506(c) relating to any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Secured Parties upon, the Prepetition Collateral; (ii) entitlement for the Secured Parties to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply; and (iii) release of the Secured Parties from  any application of the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

20.    The provisions of this Interim Order, including the grant of claims and liens to or for the benefit of the Secured Parties, and any actions taken pursuant to this Interim Order, shall survive the entry of any order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

24

21.     In the event that any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of the Bankruptcy Court or any other court, no such modification, amendment, or vacatur shall affect the validity, enforceability, or priority of any Adequate Protection Liens incurred or any Superpriority Claim granted to the Secured Parties under this Interim Order.

22.     To the extent not already provided for in this Interim Order, the Debtors and their officers, employees, professionals, and agents are hereby authorized and empowered to take such acts as are necessary or appropriate to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

23.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon the Bankruptcy Court's signature hereof; there shall be no stay of execution of effectiveness of this Interim Order.

24.     The Bankruptcy Court has and will retain jurisdiction and power to enforce this Interim Order according to its terms.

New York, New York
Dated: _____, 2019

_____
THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

25

138461432_392525-00001

## Exhibit A

**The Budget**

**Sizmek, Inc.**
**Initial Two-Week Budget**

| Week Ending: | Week 1 4/5/19 | Week 2 4/12/19 |
|---|---|---|
| **Beginning Cash**[1] | **$ 2,933,629** | **$ 308,345** |
| **Operating Receipts** | | |
| Collections on Outstanding A/R[2] | 2,646,627 | 3,396,627 |
| **Total Operating Receipts** | **2,646,627** | **3,396,627** |
| **Cash Disbursements**[3] | | |
| Payroll | (2,464,309) | (2,229,062) |
| Ltd Payroll | (1,467,468) | - |
| Other Operating Vendors | (432,633) | (837,728) |
| Professional Fees | (907,500) | (532,500) |
| **Total Operating Disbursements** | **(5,271,910)** | **(3,599,290)** |
| Net Change in Cash | (2,625,284) | (202,664) |
| **Ending Cash** | **$ 308,345** | **$ 105,682** |

**Notes:**

1. Estimated beginning cash held by or on behalf of the Debtors including restricted amounts

2. Based on estimated Accounts Receivable on the petition date; add'l $21m in March billings pending

3. Includes prepetition wages, post-petition operating and professional fees