**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SIZMEK INC., *et al.*,[1] | ) | Case No. 19-10971 (SMB) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## INTERIM ORDER
## (I) AUTHORIZING THE DEBTORS TO
## USE CASH COLLATERAL PURSUANT TO
## 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE
## PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 507, AND
## SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, and Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules, and the Local Rules, for entry of this Interim Order and entry of a Final Order by the Bankruptcy Court:

(i)     authorizing the Debtors to use Cash Collateral on the terms set forth in this Interim Order;

(ii)     granting adequate protection as set forth in this Interim Order;

(iii)     modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iv)     waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004)

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sizmek Inc. (4624); Sizmek DSP, Inc. (2319); Point Roll, Inc. (3173); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914).   The location of the Debtors' service address for purposes of these chapter 11 cases is:  401 Park Avenue South, Fifth Floor, New York, NY 10016.

[2]     Capitalized terms used and not immediately defined herein have the meanings given to them in the Motion or the Bankruptcy Code, as applicable.  The Final Order shall be in form and substance satisfactory to the Debtors and Cerberus, in their respective discretion.

and provision for immediate effectiveness of this Interim Order;

(v)    authorizing the Debtors to use Cash Collateral during the period commencing on the date of the Bankruptcy Court's entry of this Interim Order and ending on the earlier of (a) the date the Bankruptcy Court enters the Final Order and (b) the date on which the Debtors' right to use Cash Collateral terminates under the terms of this Interim Order;

(vi)    scheduling an interim hearing (the "Interim Hearing"), pursuant to Bankruptcy Rule 4001, to consider entry of this Interim Order; and

(vii)    scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis;

The Interim Hearing on the Motion having been held on April 3, 2019; and based upon all of the pleadings filed with the Bankruptcy Court, the evidence presented at the Interim Hearing and the entire record herein; and the Bankruptcy Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Bankruptcy Court having noted the appearances of all parties-in-interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors, and other parties-in-interest; and the Debtors having provided sufficient notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    Jurisdiction; Venue.  The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated February 1, 2012.  The Debtors have confirmed their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final

order by the Bankruptcy Court in connection with the Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules.

B.    Irreparable Harm. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and the Debtors' estates as more fully set forth below.

C.    Cash Collateral. The Debtors require the use of Cash Collateral to operate their businesses and pay certain prepetition obligations, including, obligations related to wages and medical benefits (collectively, the "Payroll Obligations"). Without the use of Cash Collateral, the Debtors will not be able to meet the Payroll Obligations or satisfy their working capital needs, and an immediate shutdown of the Debtors' businesses is likely to result.

D.    Secured Parties. The Debtors acknowledge and agree that, as of the Petition Date, the Debtors were parties to that certain Financing Agreement, dated as of September 6, 2017 (as subsequently amended from time to time, the "Financing Agreement") with Cerberus Business Finance, LLC ("Cerberus"), as administrative agent and collateral agent for certain revolver and term loan lenders (the "Senior Lenders") that are secured by first-priority liens on substantially all of the Debtors' assets (the "Prepetition Liens" on the "Prepetition Collateral"). The Senior Lenders and Cerberus are collectively referred to herein as the "Secured Parties."

E.    Adequate Protection. The Adequate Protection Obligations (as defined below) are sufficient to protect the interests of the Secured Parties in the Prepetition Collateral and no further

adequate protection is presently required under sections 361 or 363, or any other provision of the Bankruptcy Code.

F.    <u>Immediate Entry of Interim Order</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), upon notice provided as set forth in the Motion, which is, in the Debtors' belief, the best available under the circumstances.  The permission granted herein to utilize Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  The Debtors have an immediate need to use Cash Collateral to permit, among other things, the satisfaction of the Payroll Obligations and the orderly continuation of the operation of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Debtors' continued ability to use Cash Collateral.  Among other things, entry of the Order will minimize disruption of the Debtors' businesses and operations and permit them to pay their operating expenses, subject to the Budget, including, without limitation, to retain their employees, maintain business relationships with their vendors, and maintain customer and vendor confidence by demonstrating an ability to maintain operations.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Bankruptcy Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.    <u>Disposition</u>.  The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled,

or resolved and all reservations of rights included therein are hereby denied and overruled on their merits, but without prejudice to relief that may be granted on a final basis.

2.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact (subject to the terms set forth herein) and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rule 4001(a)(3) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

3.    <u>Authorization to Use Cash Collateral</u>.

(a)    Subject to the terms of this Interim Order and the Budget (as defined below), the Debtors are authorized to use all Cash Collateral in which the Secured Parties may have an interest.  Any dispute in connection with the use of Cash Collateral shall be heard by the Bankruptcy Court.

(b)    All use of Cash Collateral by the Debtors pursuant to the terms of this Interim Order must be pursuant to a budget approved by Cerberus (as approved, the "<u>Budget</u>").  From entry of this Interim Order, the Budget, attached hereto as **<u>Exhibit A</u>**, shall govern the Debtors' use of Cash Collateral, provided, that the Debtors shall be in compliance with the Budget so long as the Debtors' total disbursements do not exceed the total budgeted disbursements from the Budget by more than 5% as calculated on a cumulative basis. The Debtors have reason to believe that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

138501494_392525-00001

(c)     While this Interim Order remains in effect, (i) the Debtors shall continue to deposit all collections, receipts, and other Cash Collateral in deposit accounts that are subject to deposit account control agreements in favor of Cerberus, (ii) all Cash Collateral deposited in such accounts shall remain subject to a daily "sweep" by Cerberus, and (iii) notwithstanding any such "sweep," (X) Cash Collateral shall remain property of the Debtors subject to Cerberus' liens and security interests and shall be turned over and made available for use by the Debtors in accordance with the terms and conditions of this Interim Order and (Y) none of the swept funds will be applied to satisfaction of any prepetition obligation under the Financing Agreement absent a further order of the Court.  The Debtors will not use any funds made available to them except as specified in the Budget.  For avoidance of doubt, Cerberus shall not be permitted to conduct a "sweep" of any accounts which are not pledged as collateral for the Financing Agreement.

(d)     During the period in which this Interim Order is in effect, the Debtors shall segregate the Cash Collateral attributable to or arising from the Prepetition Collateral, and such Cash Collateral shall not be commingled with assets or collateral of any party which is not a Debtor and shall at all times be subject to the liens and control of the Secured Parties.

(e)     Cerberus' consent to allow the Debtors to continue to use cash collateral pursuant to the terms and conditions of this Interim Order shall expire on April 23, 2019 at 5:00 P.M. (Prevailing Eastern Time), unless, prior to such time, the Debtors have filed a motion to approve one or more section 363 sale transactions (which, in the aggregate, encompass substantially all of the Debtors'

138501494_392525-00001

assets) and associated bid procedures acceptable to Cerberus, which motion must be accompanied by (X) executed asset purchase agreements with the proposed "stalking horse" bidders and (Y) cash deposits from such bidders in amounts acceptable to Cerberus in its sole and absolute discretion; *provided, howeve*r, that Cerberus may agree, in its sole and absolute discretion, to vary any of the preceding requirements, including, without limitation, in the event the Debtors arrange for a binding sale of one or more of the Debtors' business segments or such other restructuring proposal acceptable to Cerberus.  Nothing in the foregoing impairs the Debtors' right to seek non-consensual use of cash collateral, because the Debtors either did not satisfy the foregoing condition or, in the exercise of their fiduciary discretion, determine that filing such motions to approve 363 sale transaction(s) is not in the Debtors' best interests.  In the event the Debtors file a motion seeking non-consensual use of cash collateral, any such motion is contemplated to be filed by April 19, 2019, and to be heard on April 23, 2019.

4.     <u>Carve-Out</u>.

(a)     As used in this Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code together with interest, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees, commissions, and expenses up to $50,000 incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees

and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or any official committee appointed in these chapter 11 cases pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Estate Professionals") at any time before or on the first business day following delivery of a Carve Out Trigger Notice (as defined below), but, for the avoidance of doubt, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice, but only up to an aggregate amount of the fees and expenses set forth in the Budget for the period through the Date of the Carve Out Trigger Notice *less* the amount of such fees and expenses for such period that have already been paid; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by Cerberus of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the aggregate amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by Cerberus to the Debtors, their lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon termination of the Debtors' right to use Cash Collateral by the Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve-Out Reserves. On the day on which a Carve Out Trigger Notice is given by Cerberus pursuant to the preceding subparagraph (the

8

"Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then amounts of the Allowed Professional Fees set forth in the Budget for the period through the Date of the Carve Out Trigger Notice *less* the amount of such fees and expenses for such period that have already been paid.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the $200,000 Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the  definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay Cerberus for the benefit of the Secured Parties, unless the obligations under the Financing Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve

Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post Carve Out Trigger Notice Reserve has not been reduced to zero, to pay Cerberus for the benefit of the Secured Parties, unless all amounts owed under the Financing Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(c)    No Direct Obligation To Pay Allowed Professional Fees.  None of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these chapter 11 cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

5.    Adequate Protection for Secured Parties.  The Secured Parties are hereby granted the following protections pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code or otherwise, with respect to the Prepetition Liens for the consent of such Secured Parties to the use of their Prepetition Collateral (including Cash Collateral) and as adequate protection for the

10

diminution in value of the Prepetition Collateral (the "Diminution in Value"), whether or not such Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition Collateral (including, without limitation, Cash Collateral) or the stay of enforcement of any prepetition security interest arising from section 362 of the Bankruptcy Code, or otherwise (the items set forth in clauses (a) through (c) below shall be referred to collectively as the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens.    Cerberus on behalf of the Secured Parties is granted, solely to the extent of any Diminution in Value, effective and perfected as of the date of this Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, perfected, postpetition security interests in and liens (together, the "Adequate Protection Liens") on all of the property, assets or interests in property or assets of each Debtor, each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each subsidiary of such Debtor, all of the capital stock of all other entities that are not subsidiaries directly owned by such Debtor, money, investment property, deposit accounts, all

11

commercial tort claims and other causes of action (**not including any and all causes of action arising under the Bankruptcy Code) [SHL]**, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above; (collectively, with respect to all such entities, the "Adequate Protection Collateral"), as follows:

    i.    a first priority, perfected priming security interest in and lien under sections 361(2) and 363(c)(2) of the Bankruptcy Code upon all Adequate Protection Collateral that also constitutes Prepetition Collateral, in all cases senior to the Prepetition Liens as well as all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Prepetition Liens; and

    ii.    a junior lien, under sections 361(2) and 363(c)(2) of the Bankruptcy Code upon all of the Adequate Protection Collateral of each Debtor and of each Debtor's estate that is, as of the Petition Date subject to valid, perfected, and non-avoidable liens in favor of third parties that are senior in priority to the Secured Parties' prepetition liens and interests in the applicable Prepetition Collateral (the "Prior Liens").

    (b)    Superpriority Claim.  Cerberus on behalf of the Secured Parties is granted, for the reasons set forth above in this paragraph 5, solely to the extent of any Diminution in Value, subject to the Carve-Out, a superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 507(b) of the Bankruptcy Code, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all

138501494_392525-00001

prepetition and postpetition property of the Debtors and all proceeds thereof. ~~Except as expressly set forth herein, no other superpriority claims shall be granted or allowed in these chapter 11 cases.~~ [SHL]

(c)     As further compensation for the consensual use of the Prepetition Collateral, including Cash Collateral, by the Debtors for the reasons set forth above in this paragraph 5, and in accordance with sections 361 and 363 of the Bankruptcy Code, the respective professional identified below shall receive from the Debtors current cash payments of all reasonable and documented fees and disbursements of professionals retained by the Secured Parties, in each case promptly upon receipt of summary form invoices and without the need for such professional to file any fee statement or application with the Bankruptcy Court or provide detailed time entries to the Debtors or any other party; provided that all such payments shall be subject to recharacterization to the extent permitted by the Bankruptcy Code.

(d)     <u>Reservation of Rights</u>.  Notwithstanding any other provision hereof to the contrary, the grant of Adequate Protection Obligations to the Secured Parties pursuant hereto is without prejudice to the right of the Secured Parties to seek different or additional adequate protection, including without limitation the current payment of postpetition interest (at the applicable default rate), to seek payments under section 506(b) of the Bankruptcy Code when this Interim Order or the Final Order, as applicable, is no longer in effect, or not to consent to any further use of Cash Collateral.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law.

138501494_392525-00001

Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties.  Nothing in this Interim Order shall constitute an admission that the Secured Parties are not entitled to payment or allowance of claims under section 506(b) of the Bankruptcy Code.

6. <u>Additional Provisions Regarding the Adequate Protection Obligations</u>.

(a)    The Adequate Protection Liens shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), including property or assets, if any, that does not secure the Prepetition Indebtedness.

(b)    Except as provided in this Interim Order, the Adequate Protection Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(c)    ~~Subject to entry of the Final Order, and subject to the right of any non-Debtor party to consent or approve any assignment of the Debtors' assets in the event of a sale of the Debtors' assets pursuant to section 363, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords,~~

14

~~licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting Cerberus, for the benefit of the Secured Lenders, a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors.~~ **[Reserved] [SHL]**

(d)     Unless expressly provided otherwise herein, the Adequate Protection Liens, Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the Secured Parties, shall continue in these chapter 11 cases, in any superseding case or cases under the Bankruptcy Code (including without limitation any case under chapter 7 of the Bankruptcy Code) (a "Superseding Case"), and following any dismissal of the chapter 11 cases, and such liens and claims shall maintain their priority as provided in this Interim Order until all Adequate Protection Obligations been indefeasibly paid in full in cash and completely satisfied.

(e)     All reasonable and documented fees paid and payable, and costs or expenses reimbursed or reimbursable by the Debtors to the Secured Parties are hereby approved; **provided that any unresolved objections raised with respect to the reasonableness of such fees and out of pocket expenses shall be subject to resolution by the Bankruptcy Court.** All unpaid and reasonable fees, costs,

15

and expenses shall be included and constitute part of the Superpriority Claims and be secured by the Adequate Protection Liens. **[SHL]**

7.    <u>Perfection of Adequate Protection Liens.</u>

(a)    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle Cerberus and the other Secured Parties to the priorities granted herein.

(b)    Without limiting the foregoing subparagraph, the Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to

16

challenge dispute or subordination (except as specified herein), at the time and on the date of entry of this Interim Order. The Debtors shall, if requested, execute and deliver to the Secured Parties all such agreements, financing statements, instruments and other documents as the Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)     A certified copy of this Interim Order may, in the discretion of the Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording, subject to payment of any filing or recording fees required under applicable non-bankruptcy law.

8.     <u>Termination Events</u>.

(a)     The occurrence and continuance of any of the following events, unless waived by Cerberus in writing shall constitute a termination event with respect to the Debtors' right to use the Cash Collateral pursuant to this Interim Order (the events set forth in clauses (i) through (xv) below are collectively referred to herein as the "<u>Termination Events</u>"):

i.     the Final Order has not been entered by the Bankruptcy Court within forty-five days after the Petition Date, unless such period has been extended (X) by mutual agreement of Cerberus and the Debtors or (Y) by order of the Bankruptcy Court;

ii.     [reserved];

iii.    failure of the Debtors to make any payment required under this Interim Order after such payment becomes due under the terms hereof;

iv.    failure of the Debtors to comply in any material respect with any covenant, agreement, or provision of this Interim Order;

v.    other than through entry of **a further Interim Order or** the Final Order, an order is entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order, or that has the effect of any of the foregoing, without the advance written consent of Cerberus; **[SHL]**

vi.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order dismissing any of these chapter 11 cases;

vii.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

viii.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in these chapter 11 cases;

ix.    any Debtor uses Cash Collateral to fund any payments in respect of prepetition or post-petition claims other than (i) as permitted under this Interim Order or any other order of the Bankruptcy Court; or (ii) as otherwise expressly contemplated by the Budget or an order consented to by Cerberus; or

x.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order terminating the use of Cash Collateral.

(b)    <u>Remedies upon the Cash Collateral Termination Date</u>. The Debtors shall promptly provide notice to Cerberus (with a copy to counsel for the U.S. Trustee and any official committee) of the occurrence of any Termination Event. The Debtors' right to use Cash Collateral pursuant to this Interim Order shall automatically terminate on the date that is the ~~second business~~ **seventh** day following the delivery of a written notice (any such notice, a "<u>Cash Collateral Termination Notice</u>," any such ~~two~~ **seven**-day period of

18

time following delivery of a Cash Collateral Termination Notice, the "Default Notice Period," and the date following the Default Notice Period, the "Cash Collateral Termination Date") by Cerberus to the Debtors, counsel for the U.S. Trustee, and any official committee of the occurrence of any Termination Event unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Secured Lenders in their reasonable discretion, provided further that, (W) during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Interim Order**. Notwithstanding the foregoing, termination shall not occur if, ; (X) in the case of Termination Events described in clauses ii, v, vi, vii and viii above, the termination shall automatically occur on the occurrence of the event described in the applicable clause without any requirement of notice from Cerberus or the running of a Default Notice Period; (Y) in the case of Termination Events described in clauses iv and ix above, the termination shall occur on the seventh calendar day following the Collateral Termination Notice, unless,** prior to such date, the Bankruptcy Court enters a contrary court order (with any hearing before the Bankruptcy Court to be scheduled on an expedited basis). **; and (Z) [SHL]** Nothing contained herein shall prohibit or restrict the Debtors from seeking further relief from the Bankruptcy Court regarding the use of Cash Collateral following the delivery of any Cash Collateral Termination

19

Notice.  Upon the Cash Collateral Termination Date: (a) the Debtors' right to use Cash Collateral (other than the Carve-Out in accordance with paragraph 4 hereof) shall terminate, (b) the Adequate Protection Obligations, if any, shall become immediately due and payable, and (c) Cerberus and the other Secured Parties may, within seven calendar days after occurrence of the Cash Collateral Termination Date and in each case subject to the Carve-Out, exercise the rights and remedies available under the Financing Agreements, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary or appropriate to permit such actions. Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Secured Parties under this Interim Order shall survive the Cash Collateral Termination Date.  Notwithstanding anything to the contrary in this Interim Order, and for the avoidance of doubt, nothing in this Interim Order grants Cerberus relief from the automatic stay to interfere with or take possession of property of the Debtors' estates based upon a Termination Event.

9.      <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, no Adequate Protection Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds

thereof, or any portion of the Carve-Out may be used by any of the Debtors, their estates, any affiliate of the Debtors, any creditors' committee, any trustee or examiner appointed in these chapter 11 cases or any chapter 7 trustee, or any other person, party or entity to, directly or indirectly, (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of Bankruptcy Code, or otherwise; (b) prosecute or support any action that has the effect of contesting the Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Financing Agreements anywhere in the world; or (c) pay any claim of a prepetition creditor except as expressly allowed by this Interim Order or other order of the Bankruptcy Court.

10.    Investigation Period.  Notwithstanding anything herein to the contrary, until the day that is 75 days from the date of the entry of the Final Order (as such date may be extended by Cerberus or by the Bankruptcy Court subject to applicable law, the "Investigation Termination Date")[3], the creditors' committee, if any, or any other party in interest shall be entitled to investigate the liens and claims of and claims against the Secured Parties;[4] provided, however, that the creditors' committee, if any, may use up to $25,000 of the Cash Collateral (the "Investigation Fund") for such investigation.  Any fees incurred by the creditors' committee in excess of the Investigation Fund incurred in connection with such investigation shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.  Any assertion of claims or causes of action of the Debtors or their estates against any of the Secured

---

[3]    If the Final Order is not entered, then the Investigation Termination Date shall be the ninetieth calendar day after the entry of this Interim Order.

[4]    Nothing herein shall be interpreted as conferring on any person or entity standing to pursue any claim, cause of action or take any action on behalf of the Debtors or their respective estates.

138501494_392525-00001

Parties by any party in interest must be made by commencing an adversary proceeding or contested matter on or before the Investigation Termination Date.  If no such action is filed on or before the Investigation Termination Date, then all persons and entities shall be forever barred from bringing or taking such action.

11.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before the Bankruptcy Court.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law. The rights of the Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Secured Parties' rights under the Financing Agreement and all related documents; (b) the Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) any of the Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Parties.

12.    <u>Extension of Budget</u>.  If the Debtors timely **file the sale motion contemplated** ~~satisfy the milestone set forth~~ in paragraph 3(e) and provide Cerberus with a further budget acceptable to Cerberus in its sole and absolute discretion on or before the expiration of the Budget, then such further budget shall become operative and shall govern the Debtors' use of Cash Collateral for the period covered by such budget pursuant to the terms and conditions of this Interim Order.  If such further budget becomes operative, the Debtors shall promptly file notice of same.  **[SHL]**

13. <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the Motion, any other order of the Bankruptcy Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" such other document, the terms and provisions of this Interim Order shall govern. To the extent there is any inconsistency between this Interim Order and any order concerning the Debtors' cash management systems or bank accounts or any other "first day" relief, this Interim Order shall control.

14. <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

15. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

16. <u>Final Hearing Date.</u>  The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on April 23, 2019 at 10:00 a.m. before the Honorable Stuart M. Bernstein at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Manhattan, NY 10004.

17. <u>Adequate Notice</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(b)(3), and the Local Bankruptcy Rules, and was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms of the Final Order, and any other entity requesting notice after the entry of this Interim Order.

Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Bankruptcy Court and served so as to be <u>actually</u> <u>received</u> no later than 7 days prior to the Final Hearing by the following: (i) the Debtors, 401 Park Avenue South, Fifth Floor, New York, NY 10016, Attn: George Pappachen; (ii) proposed counsel to the Debtors, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York, 10022, Attn: Steven J. Reisman, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661-3693, Attn: Peter A. Siddiqui; (iii) counsel to Cerberus: Thomas E. Patterson & David A. Fidler, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067; (iv) counsel to the official committee of unsecured creditors, if any; (vi) the Office of the United States Trustee for Southern District of New York, Region 2, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Richard Morrissey; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002, and shall be filed with the Clerk of the Bankruptcy Court.

18.    <u>Binding Effect; Successors and Assigns</u>.  Except as expressly provided herein, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in these chapter 11 cases, including, without limitation, the Secured Parties, any creditors' committee or examiner appointed in these chapter 11 cases, and the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor) whether in these chapter 11 cases, in any successor cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the Secured Parties and their respective successors and assigns.

138501494_392525-00001

19.    <u>The Debtors' Intention to Seek Certain Waivers</u>.  In connection with entry of the Final Order, the Debtors intend to seek **language providing for the following:** (i) full and final waivers by the Debtors and their estates of any claim or right under Bankruptcy Code section 506(c) relating to any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Secured Parties upon, the Prepetition Collateral; (ii) that the rights and benefits of section 552(b) apply to the Secured Parties and that **the Debtors will not seek to invoke** the "equities of the case" exception ~~shall not apply, provided that the Bankruptcy Court shall retain for itself the discretion to apply the "equities of the case" exception in accordance with applicable law~~; (iii) release of the Secured Parties from any application of the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral; (iv) that the Adequate Protection Liens shall encumber proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code; and (v) that no obligation, payment, transfer, or grant of security to the Secured Parties under this Interim Order be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim. **[SHL]**

20.    The provisions of this Interim Order, including the grant of claims and liens to or for the benefit of the Secured Parties, and any actions taken pursuant to this Interim Order, shall survive the entry of any order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

21.    Except in connection with **a further Interim Order or** the Final Order, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of the Bankruptcy Court or any other court, no such modification,

138501494_392525-00001

amendment, or vacatur shall affect the validity, enforceability, or priority of any Adequate Protection Liens incurred or any Superpriority Claim granted to the Secured Parties under this Interim Order. **[SHL]**

22.     To the extent not already provided for in this Interim Order, the Debtors and their officers, employees, professionals, and agents are hereby authorized and empowered to take such acts as are necessary or appropriate to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

23.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon the Bankruptcy Court's signature hereof; there shall be no stay of execution of effectiveness of this Interim Order.

24.     The Bankruptcy Court has and will retain jurisdiction and power to enforce this Interim Order according to its terms.

New York, New York                        */s/ Sean H. Lane*
Dated: April 4, 2019                        THE HONORABLE SEAN H. LANE
                                           UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**The Budget**

**Sizmek, Inc.**
**Initial Budget Through April 23, 2019**

| Week Ending: | Week 1<br>4/5/19 | Week 2<br>4/12/19 | Week 3<br>4/19/19 | Partial Week 4<br>4/23/19 |
|---|---|---|---|---|
| **Beginning Cash[1]** | **$ 2,933,629** | **$ 308,345** | **$ 105,682** | **$ 104,745** |
| **Operating Receipts** | | | | |
| Collections on Outstanding A/R[2] | 2,646,627 | 3,396,627 | 3,396,627 | 1,940,929 |
| **Total Operating Receipts** | **2,646,627** | **3,396,627** | **3,396,627** | **1,940,929** |
| **Cash Disbursements[3]** | | | | |
| Payroll (Including Taxes & Benefits) | (2,464,309) | (2,229,062) | (1,114,531) | (636,875) |
| Ltd Payroll | (1,467,468) | - | - | |
| Operating Vendors | (432,633) | (837,728) | (1,880,532) | (1,018,876) |
| Professional Fees | (907,500) | (532,500) | (402,500) | (280,000) |
| **Total Operating Disbursements** | **(5,271,910)** | **(3,599,290)** | **(3,397,563)** | **(1,935,751)** |
| Net Change in Cash | (2,625,284) | (202,664) | (937) | 5,179 |
| **Ending Cash** | **$ 308,345** | **$ 105,682** | **$ 104,745** | **$ 109,924** |

**Notes:**

1. Estimated beginning cash held by or on behalf of the Debtors including restricted amounts

2. Based on estimated Accounts Receivable on the petition date; add'l $21m in March billings pending

3. Includes prepetition wages, post-petition operating and professional fees