**Hearing Date: June 18, 2019 at 10:00 a.m.**

Seth Van Aalten
Michael Klein
Lauren Reichardt
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
                        :

In re:                    :    Chapter 11

                        :

SIZMEK INC., *et al.*,[1]      :    Case No. 19-10971 (SMB)

                        :

        Debtors.       :    (Jointly Administered)

                        :

                        :

------------------------------------- X

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING A PRIVATE SALE OF DEBTOR SELLERS' PORTION OF THE ADSERVER BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER <u>INTERESTS, AND GRANTING RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Sizmek Inc., *et al.*,

as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), by and through its undersigned

counsel, hereby submits this objection (this "<u>Objection</u>") to the *Debtors' Motion for an Order*

*Authorizing and Approving A Private Sale of the Debtor Sellers' Portion of the AdServer Business*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sizmek Inc. (4624); Point Roll, Inc. (3173); Sizmek DSP, Inc. (2319); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914). The location of the Debtors' service address for purposes of these chapter 11 cases is: 401 Park Avenue South, 5th Floor, New York, NY 10016.

*Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, and Granting Related Relief* (the "Sale Motion")[2] [ECF No. 210], and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Since the outset of these cases, the Committee's sole focus has been to maximize the value of the Debtors' assets in order to generate the highest possible recoveries for all of the Debtors' creditor constituencies.   Earlier in these cases, the Committee reluctantly supported the Debtors' sale of their Demand Side Platform ("DSP") and Data Management Platform ("DMP") based on the belief that the transaction would facilitate a more orderly sale of the Debtors' remaining business lines, and foster discussions among the Debtors, Cerberus, and the Committee on the terms of a case exit that would provide a meaningful recovery to unsecured creditors.  The Debtors reinforced this understanding at the hearing to approve the DSP and DMP sale, during which they justified the underwhelming nature of the sale by representing that subsequent sales of their AdServer and Peer39 businesses would be a vehicle to drive value to unsecured creditors.[3] The Debtors did not keep their word.  As presently constructed, the AdServer sale does nothing more than (i) further enhance Cerberus's recoveries and (ii) ensure the employment by Amazon of certain members of the Debtors' senior management who are directly responsible for the Debtors' free fall into chapter 11.  As such, the Committee is compelled to object.

2.      In addition to doing nothing to remedy the harm caused to general unsecured creditors by the Debtors' demise, the sale should not be approved because the Debtors have not established the necessary factual predicates for a sale outside of a plan.  The Debtors have failed to demonstrate that the expedited sale of the AdServer business (and the delivery of the proceeds

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[3] Apr. 29, 2019 Hrg. Tr. 16:1-20.

thereof to Cerberus) constitutes a sound exercise of their business judgment.  Indeed, unlike with respect to the DSP and DMP sale, there is no evidence that the AdServer business is declining in value, and the sale as currently postured could doom these estates to administrative insolvency, eliminate the possibility of a return for general unsecured creditors, and provide an immediate path to chapter 7 conversion.  In light of these deficiencies, the Debtors have not met their burden under *Lionel*, and the Committee respectfully submits that the Sale Motion should not be approved under section 363(b) of the Bankruptcy Code.

3.      The sale of the AdServer business is a crucial moment in these cases.  The proceeds generated therefrom should remain in these estates while the parties continue negotiating towards a global resolution that provides for plan confirmation and a path to meaningful recoveries for unsecured creditors.  The Committee cannot support a sale that does not effectuate this result.

## BACKGROUND

4.      On March 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On April 17, 2019, the Office of the United States Trustee appointed the Committee in these cases.

6.      The Debtors continue to operate their businesses with the authorized use of cash collateral on an interim basis.  *See Fourth Interim Order (I) Authorizing the Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [ECF No. 239].

7.      On April 23, 2019, this Court entered an order [ECF No. 143] (the "First Sale

3

Order") approving a private sale of the Debtors' DSP and DMP to Zeta Global Holdings (the

"DSP/DMP Sale").

8.      Pursuant to the First Sale Order, all proceeds from the DSP/DMP Sale that were

payable at closing, and 50% of all "Subsequent Payments" (as defined in the First Sale Order)

were paid directly to Cerberus.  First Sale Order ¶ 15.  Therefore, the value received by the

Debtors' estates from the DSP/DMP Sale was limited to the remaining 50% of the Subsequent

Payments.

9.      On June 3, 2019, the Debtors filed the Sale Motion, through which they seek the

Court's approval of a private sale of the Debtors' AdServer business to Amazon.com, Inc.,

pursuant to section 363(b) of the Bankruptcy Code, and outside of a plan of reorganization.

10.     The total sale price contemplated by the Sale Transaction is approximately

$30,000,000.  However, only $12,266,000 of the sale price is to be allocated to Debtor Seller, with

the remaining portion of the sale price allocated to two Non-Debtor Sellers, Sizmek UK and

Sizmek Israel.  The Sale Order contemplates that upon closing, the Debtors are directed to pay to

Cerberus:

> [a portion of the amount payable to the Debtor Seller by the Buyer
> at closing (whether in the form of cash or otherwise) (the "Direct
> Cerberus Payments") to be agreed by the Debtors and Cerberus.]
> The Direct Cerberus Payments include, without limitation, proceeds
> of the Sale Transaction attributable to the Debtor Seller's Purchased
> Assets and certain proceeds that, pursuant to the APA, will be paid
> to the Debtor Sellers on account of Sizmek Israel's obligations under
> that certain Amended and Restated Promissory Note dated October
> 27, 2016 (the "Intercompany Note").  Cerberus is authorized to
> apply the Direct Cerberus Payments to satisfy amounts owed to the
> Secured Parties under the Financing Agreements in accordance with
> the terms and conditions thereof.  In furtherance of the foregoing,
> the Debtors' rights under the Intercompany Note, including, without
> limitation, all rights of enforcement and payment (subject to the
> terms of the APA), are hereby assigned to Cerberus.

Sale Order ¶ 36 (brackets in original).  If this Sale Transaction is approved, with the Sale Order in its current form directing the Debtors pay to Cerberus potentially all proceeds of the Sale Transaction allocable to the Debtor Sellers, the only remaining assets of the Debtors will be the Peer39 business line, which the Debtors intend to sell in the near term through another private sale and outside of a plan of reorganization, and any receivables to which the Debtors' estates are entitled.  The Sale Transaction, therefore, does not benefit any party in interest or stakeholder, except for Cerberus.

## **OBJECTION**

11.    The Court should not approve the Sale Motion because the Debtors have failed to meet their burden under applicable Second Circuit law to provide a sound business justification for the consummation of the Sale Transaction outside of a plan.  Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b).  Section 363(b), however, does not confer *carte blanche* discretion to permit the disposition of estate assets outside of a plan.  *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  The Second Circuit requires bankruptcy courts to "expressly find from the evidence presented before [it] at the hearing a good business judgment to grant such application."  *Id.* at 1071.

12.    Such "business judgment" may include "evidence of the perishable nature of the assets to be sold, the likelihood that such assets will deteriorate in value, or presence of a good business opportunity only available to the parties if they act quickly."  *Id.* at 1066-70 (analyzing decades of case law).  The *Lionel* court set forth a nonexclusive list of factors for courts to consider when determining whether to approve a sale under section 363(b), including the proportionate

5

value of the assets to the estate as a whole, the effect of the proposed disposition on future plans of reorganization, and whether the asset is increasing or decreasing in value. *Id.* at 1071.

13.     Moreover, it is the Debtors' burden to show that a sale "out of the ordinary course of business will aid the debtor's reorganization." *Lionel*, 722 F.2d at 1071. Sales under section 363(b) deprive parties in interest from the safeguards chapter 11 otherwise provides to creditors, including the disclosure, solicitation, and acceptance requirements inherent to the plan process. Although a debtor need not show an "emergency" for a sale under section 363(b) to be approved, section 363(b) must be construed in a way to keep in place chapter 11's safeguards. *Id.* at 1069 (noting that the procedural requirements of "notice and a hearing" would be meaningless and appellate review effectively precluded absent a further requirement that reasons be given for a sale outside of a plan of reorganization); *see also Mission Iowa Wind Co. v. Enron Corp.*, 291 B.R. 39, 43 (S.D.N.Y. 2003) ("Where a debtor attempts to sell substantially all of its assets pursuant to 11 U.S.C. § 363(b), instead of waiting for confirmation of a reorganization plan and the safeguards that that process provides, more than cursory scrutiny is required by the Bankruptcy Court.") (citation omitted).

14.     Approval of a sale under section 363(b) merely to avoid delay in its consummation is "not a justification for abandoning proper standards." *Lionel*, 722 F.2d at 1071 (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)). Moreover, approving a sale under 363(b) to appease one creditor is also not justification for abandoning the safeguards of chapter 11. The law in the Second Circuit is clear that pressure from one party in interest for a sale under section 363(b) is not a "sound business justification" and "ignores the equity interests required to be weighed and considered under Chapter 11." *Lionel*, 722 F.2d at 1071. Instead, the court "must not blindly follow the hue and

6

cry of the most vocal special interest groups" but should rather "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equityholders, alike." *Lionel*, 722 F.2d at 1071. *See also In re Grubb & Ellis Co.*, No. 12-10685 MG, 2012 WL 1036071, at \*5 (Bankr. S.D.N.Y. Mar. 27, 2012), *aff'd,* 523 B.R. 423 (S.D.N.Y. 2014) (approving sale under 363(b) and finding that the deal was structured in a way that the Debtors' estates, the Committee, and other parties in interest could potentially share in the proceeds). *But see In re Chrysler LLC*, 405 B.R. 84, 98 (Bankr. S.D.N.Y. 2009) (approving sale under 363(b) where "the security interest of the First-Lien Lenders will attach to the sale proceeds and there will be an immediate and indefeasible distribution of all the . . . cash sale price to the First-Lien Lenders" but finding such sale necessary to preserve going concern value of the Chrysler business and maximize value of the estates).

15.     Here, the Debtors have failed to substantiate a sound business judgment that the Sale Transaction will aid in the Debtors' reorganization. The Debtors seek approval for the Sale Transaction pursuant to section 363(b) on the grounds that the Sale Transaction is in the best interest of the Debtors' estates because time is of the essence. Despite substantial interest from parties for the Purchased Assets, the Debtors submit that the "potential loss of access to cash collateral if the AdServer must be sold through a lengthier sale process" justifies the Sale Transaction, including the potential release of all proceeds allocated to the Debtor Seller to Cerberus. Sale Motion ¶ 18; FTI Declaration ¶ 16. Such reasoning by the Debtors is insufficient to satisfy the "business judgment" standard. *See Lionel*, 722 F.2d at 1071 (avoiding delay is not a justification for approving a sale under section 363(b)).

16.     In contrast to the DSP/DMP Sale, where the Debtors submitted evidence of rapidly diminishing asset value,[4] here the Debtors provide no evidence supporting such declining value, or argument for why Cerberus must receive proceeds of the AdServer sale outside of a plan.  The Debtors assert only that "prompt consummation" will preserve many jobs, central to maximizing value in these cases.  Motion ¶ 19.  Although a sale under 363(b) may be an appropriate means of disposing assets in chapter 11, such procedure is not appropriate here where the proceeds of the sale are being used to benefit only one party, rather than to fund a plan.  *See In re GSC, Inc.*, 453 B.R. 132, 155 (Bankr. S.D.N.Y. 2011) (citing *In re Chrysler LLC*, 405 B.R. at 96) ("A debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation providing for the distribution of the proceeds of the sale.  This strategy is employed, for example, when there is a need to preserve the going concern value.").

17.     The Debtors provide no sound business justification for approving a sale pursuant to section 363(b) outside of a plan of reorganization and which will not aid in the Debtors' reorganization.  Unless all or a portion of the sale proceeds are allocated to allow the Debtors to put forth a confirmable plan of reorganization that will provide for payment of administrative expenses and benefit other parties in interest aside from Cerberus, the Debtors fail to meet their burden under *Lionel* that the Sale Transaction will aid in the Debtors' reorganization.

---

[4] *See Declaration of Sascha Wittler, Chief Financial Officer of Sizmek Inc., In Support of Debtors' Motion for an Order Authorizing and Approving a Private Sale of the Demand Side Platform and the Data Management Platform Free and Clear of All Liens, Claims, Encumbrances, and other Interests, and Granting Related Relief* [ECF No. 79] ¶ 8-11 (explaining that the "advertising inventory supply into the DSP has been declining precipitously" since the Petition Date, that vendors have withdrawn from flowing supply into Debtors' supply, that DSP customers are migrating to competitors, that the "DSP is moving toward a dry state of being short of threshold levels of advertising to support customer's advertising inventory needs," that "DSP is meaningfully loss making," "cannot sustain further uneconomic performance," will need to quickly shut down if the losses continue, that if DSP shuts down within days customers will have to transition to other providers creating a permanent shift in revenue and loss to DSP's going concern value, and that the DSP and DMP are interdependent).

8

The Committee cannot, and will not, support the Sale Transaction in the absence of a global resolution that benefits all parties in interest, including unsecured creditors.

**WHEREFORE,** the Committee respectfully submits this Objection and reserves its right to raise additional issues with the Sale Motion and approval of the Sale Transaction and proposed Sale Order at or prior to the hearing on the same.

Dated: New York, NY
      June 14, 2019

**COOLEY LLP**

By: */s/ Seth Van Aalten*
    Seth Van Aalten
    Michael Klein
    Lauren Reichardt
    55 Hudson Yards
    New York, NY 10001
    Telephone:  (212) 479-6000

    *Counsel for the Official*
    *Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Preliminary Statement was served by CM/ECF and/or mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Seth Van Aalten*
Seth Van Aalten