**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SIZMEK INC., *et al.*,[1] | ) | Case No. 19-10971 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 507, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules, and the Local Rules, for entry of an interim order and entry of this final order (this "Final Order") by the Bankruptcy Court:

(i)    authorizing the Debtors to use Cash Collateral on the terms set forth in this Final Order;

(ii)    granting adequate protection as set forth in this Final Order;

(iii)    modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(iv)    waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004) and provision for immediate effectiveness of the First Interim Order (as defined below) and this

---

[1]    Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sizmek Inc. (4624); Point Roll, Inc. (3173); Sizmek DSP, Inc. (2319); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); WirelessDeveloper, Inc. (9686); X Plus One Solutions, Inc. (8106); X Plus Two Solutions, LLC (4914); and Solomon Acquisition Corp. (4229).  The location of Debtors' service address for purposes of these chapter 11 cases is:  Realization Services, Inc. Att.: Melanie Browne, P.O. Box 189, Bedford Hills, NY 10507.

[2]    Capitalized terms used and not immediately defined herein have the meanings given to them in the Motion or the Bankruptcy Code, as applicable.

Final Order; and

(v)     scheduling a final hearing (the "Final Hearing") to consider entry of this Final Order

granting the relief requested in the Motion on a final basis;

An interim hearing (the "First Interim Hearing") having been held on April 3, 2019, and

subsequent interim hearings on the Motion having been held on April 23, 2019, May 30, 2019,

June 20, 2019, July 12, 2019, August 6, 2019, August 15, 2019, August 22, 2019, September 19,

2019, October 3, 2019, October 17, 2019, November 7, 2019, November 21, 2019, December 5,

2019, and December 16, 2019 (collectively, together with the First Interim Hearing, the "Interim

Hearings"), and the Final Hearing having been held on January 7, 2020; and based upon all of the

pleadings filed with the Bankruptcy Court, the evidence presented at the Interim Hearings and

Final Hearing and the entire record herein; and the Bankruptcy Court having heard and resolved

or overruled all objections to the relief requested in the Motion; and the Bankruptcy Court having

noted the appearances of all parties-in-interest; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, and their creditors, and other parties-

in-interest; and the Debtors having provided sufficient notice of the Motion as set forth in the

Motion and it appearing that no further or other notice of the Motion need be given; and after due

deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARINGS AND THE FINAL HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      <u>Jurisdiction; Venue</u>.  The Bankruptcy Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the

United States District Court for the Southern District of New York, dated February 1, 2012.  The

Debtors have confirmed their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final

order by the Bankruptcy Court in connection with the Motion to the extent that it is later

2

determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules.

B.    <u>Interim Orders</u>.  Based on the Motion, the Interim Hearings, and all the relevant pleadings filed with this Court, the Court granted the Motion on an interim basis and entered the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [Docket No. 37] (the "<u>First Interim Order</u>") and subsequent interim orders continuing the Debtors' authority to use cash collateral[3] (collectively, the "<u>Subsequent Interim Orders</u>" and, together with the First Interim Order, the "<u>Interim Orders</u>").

C.    <u>Cash Collateral</u>.  The Debtors require the use of Cash Collateral to continue the wind-down of their businesses and pay certain obligations, including obligations related to those parties responsible for collecting, administering and liquidating the Debtors' remaining assets. The use of Cash Collateral will also permit the Debtors to pursue confirmation of a chapter 11 plan of liquidation that will provide for the creation of a liquidating trust charged with monetizing the Debtors' remaining assets for the benefit of the Debtors' creditors.  Without the use of Cash Collateral, the Debtors will not be able to complete an orderly wind-down of their businesses to

---

[3]    Subsequent interim orders continuing the Debtors' authority to use cash collateral were entered at docket numbers 104, 167, 172, 239, 270, 319, 329, 383, 388, 403, 449, 467, 483, 508, 521, 545, and 562.

maximize value for creditors, and fire-sale liquidation of the Debtors' remaining assets is likely to result.

D.    <u>Secured Parties</u>.  The Debtors acknowledge and agree that, as of the Petition Date, the Debtors were parties to that certain Financing Agreement, dated as of September 6, 2017 (as subsequently amended from time to time, the "<u>Financing Agreement</u>") with Cerberus Business Finance, LLC ("<u>Cerberus</u>"), as administrative agent and collateral agent for certain revolver and term loan lenders (the "<u>Senior Lenders</u>") and the Debtors' obligations under the Financing Agreement and related documents (the "<u>Prepetition Obligations</u>") are secured by legal, valid, binding, enforceable, fully perfected, first-priority security interests in and continuing liens on substantially all of the Debtors' assets (the "<u>Prepetition Liens</u>" on the "<u>Prepetition Collateral</u>"). The Senior Lenders and Cerberus are collectively referred to herein as the "<u>Secured Parties</u>."  The Debtors further acknowledge and agree that (i) the Prepetition Liens were granted to and for the benefit of the Secured Parties for fair consideration and reasonably equivalent value and are not subject to avoidance, recharacterization, or subordination (except as expressly provided herein) pursuant to the Bankruptcy Code or other applicable law and (ii) the Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors not subject to setoff, recoupment, offset, defense, reduction, or counterclaim.

E.    <u>Adequate Protection</u>.  The Adequate Protection Obligations (as defined below) are necessary to protect the interests of the Secured Parties in the Prepetition Collateral and no further adequate protection is presently required under sections 361 or 363, or any other provision of the Bankruptcy Code.

F.    <u>Entry of Final Order</u>.  The Debtors have an immediate need to use Cash Collateral to permit, among other things, the orderly completion of the wind-down of the Debtors' businesses

through a chapter 11 plan of liquidation.  The Debtors do not have sufficient available sources of working capital and financing to carry on the wind-down of their businesses without the Debtors' continued ability to use Cash Collateral.  Among other things, entry of this Final Order will maximize the value of the Debtors' remaining assets for the benefit of creditors by permitting the Debtors to pursue a chapter 11 plan that would provide for the creation of a liquidating trust.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Bankruptcy Court at the Interim Hearings and the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.    <u>Disposition</u>.  The Motion is granted on a final basis and on the terms set forth herein. Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits. Notwithstanding the foregoing or anything to the contrary herein, and for the avoidance of doubt, the Limited Objection of Amazon.com, Inc. to the Motion is deemed withdrawn only to the extent it objected to the entry of this Final Order and, otherwise, all of Amazon.com, Inc.'s rights are reserved with respect to the matters raised in its limited objection.  The terms and conditions of the First Interim Order, as modified by the Subsequent Interim Orders, are hereby ratified, except to the extent expressly modified by this Final Order, and all protections afforded to the Secured Parties pursuant to the Interim Orders are hereby ratified and confirmed on a final basis.

2.    <u>Effectiveness</u>.  This Final Order shall constitute findings of fact (subject to the terms set forth herein) and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of

5

Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

      3.    <u>Authorization to Use Cash Collateral</u>.

      (a)    Subject to the terms of this Final Order and the Budget (as defined below), the Debtors are authorized to use all Cash Collateral in which the Secured Parties may have an interest. Any dispute in connection with the use of Cash Collateral shall be heard by the Bankruptcy Court.

      (b)    All use of Cash Collateral by the Debtors pursuant to the terms of this Final Order must be pursuant to a cashflow budget approved by Cerberus (as approved, the "<u>Budget</u>") that is in all respects consistent with the agreed wind-down budget attached hereto as **<u>Exhibit A</u>** (the "<u>Wind-Down Budget</u>"), provided that the Debtors' compliance with the Budget shall be measured on a weekly basis and the Debtors shall be in compliance with the Budget so long as the Debtors' total disbursements for any calendar week (Sunday through Saturday) do not exceed the total budgeted disbursements from the Budget for the same period by more than 5% in the aggregate. An initial budget, covering two calendar weeks beginning on January 12, 2020, is attached hereto as **<u>Exhibit B</u>** (the "<u>Initial Budget</u>") and shall govern the Debtors' use of Cash Collateral under this Final Order for the period of time covered by the Initial Budget. The Debtors have reason to believe that the Initial Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Initial Budget. By no later than 4:00 p.m. (prevailing Eastern Time) on the Wednesday of every second week (beginning on January 22, 2020), the Debtors shall deliver

6

via email to Cerberus a proposed updated budget (each, a "Proposed Updated Budget") for the period of time beginning with the Sunday of the following week and running through the following 13 days that is in all respects consistent with the Wind-Down Budget.  If the Debtors timely provide Cerberus with a Proposed Updated Budget acceptable to Cerberus in its sole and absolute discretion on or before the expiration of the then-current Budget, such Proposed Updated Budget shall become operative, shall govern the Debtors' use of Cash Collateral for the period covered by such budget pursuant to the terms and conditions of this Final Order, and shall become and thereafter be the "Budget" for all purposes under this Final Order.  If a Proposed Updated Budget becomes operative, the Debtors shall promptly file notice of same.  Any portion of a Proposed Updated Budget that is not consistent with the Wind-Down Budget will not be incorporated into the Budget unless and until Cerberus consents to such portions in writing.  For so long as this Final Order remains in effect, the Debtors shall deliver via email to Cerberus by no later than 4:00 p.m. (prevailing Eastern Time) on Tuesday of each calendar week a budget report showing actual receipts and disbursements for the immediately preceding calendar week (Sunday through Saturday).

(c)     While this Final Order remains in effect, (i) the Debtors shall continue to deposit all collections, receipts, and other Cash Collateral in deposit accounts that are subject to deposit account control agreements in favor of Cerberus, (ii) all Cash Collateral deposited in such accounts shall remain subject to a daily "sweep" by Cerberus, and (iii) notwithstanding any such "sweep," except upon and following the Cash Collateral Termination Date (as defined below) (X)

7

Cash Collateral shall remain property of the Debtors subject to Cerberus' liens and security interests and shall be turned over and made available for use by the Debtors in accordance with the terms and conditions of this Final Order and (Y) none of the swept funds will be applied to satisfaction of any prepetition obligation under the Financing Agreement absent a further order of the Court.  The Debtors will not use any funds made available to them except as specified in the Budget.  For avoidance of doubt, Cerberus shall not be permitted to conduct a "sweep" of any accounts which are not pledged as collateral for the Financing Agreement.

(d)     During the period in which this Final Order is in effect, the Debtors shall segregate the Cash Collateral comprising, attributable to, or arising from the Prepetition Collateral, and such Cash Collateral shall not be commingled with assets or collateral of any party which is not a Debtor and shall at all times be subject to the liens and control of the Secured Parties.

4.    <u>Carve Out</u>.

(a)     As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code together with interest, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees, commissions, and expenses up to $50,000 incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms

8

retained by the Debtors or the official committee of unsecured creditors appointed
in these chapter 11 cases (the "Committee") pursuant to section 327, 328, 363, or
1103 of the Bankruptcy Code (the "Professional Persons") at any time before the
Cash Collateral Termination Date (as defined below) but, for the avoidance of
doubt, whether allowed by the Bankruptcy Court prior to or after delivery of a Cash
Collateral Termination Notice (the date of such delivery, the "Termination
Declaration Date"), but only up to an aggregate amount of the fees and expenses
set forth in the Budget for the period through the Termination Declaration Date *less*
the amount of such fees and expenses for such period that have already been paid
(provided that Cash Collateral may not be used to pay fees and expenses of
Professional Persons retained by the Committee in excess of $900,000.00 in the
aggregate, including fees and expenses of the Committee's Professional Persons
previously paid or escrowed; provided further, however, that any such fees and
expenses of the Committee's Professional Persons in excess of $900,000.00, to the
extent ultimately allowed by an order of the Court, may be paid out of any Cash
Collateral that Cerberus agrees may be used to fund recoveries for general
unsecured creditors under a chapter 11 plan of liquidation); and (iv) Allowed
Professional Fees of Professional Persons (other than Professional Persons retained
by the Committee) in an aggregate amount not to exceed $200,000 incurred on or
after the Cash Collateral Termination Date, to the extent allowed at any time,
whether by interim order, procedural order, or otherwise (the aggregate amount set
forth in this clause (iv) being the "Post-Carve Out Trigger Cap").

(b)    <u>Carve Out Reserves</u>.   The Cash Collateral Termination Notice shall constitute a demand to the Debtors immediately to utilize all cash on hand as of the Termination Declaration Date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the aggregate amount of the Allowed Professional Fees set forth in the Budget for the period through the Termination Declaration Date *less* the amount of such fees and expenses for such period that have already been paid or escrowed.  On the Termination Declaration Date, the Debtors shall deposit and thereafter hold such amounts, together with previously escrowed amounts, in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Reserve</u>") prior to any and all other claims.   On the Termination Declaration Date, the Debtors shall utilize all remaining cash on hand as of such date after funding the Pre-Carve Out Trigger Reserve, and any available cash thereafter held by any Debtor, to fund a reserve in an amount equal to the $200,000 Post-Carve Out Trigger Cap (the "<u>Post-Carve Out Trigger Reserve</u>" and, together with the Pre-Carve Out Trigger Reserve, the "<u>Carve Out Reserves</u>") for payment of Allowed Professional Fees subject to the Post-Carve Out Trigger Cap prior to any and all other claims (other than those subject to the Pre-Carve Out Trigger Cap).  All funds in the Pre-Carve Out Trigger Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (but not, for the avoidance of doubt, the amounts described in clause (iv) of such definition) and then, to the extent the Pre-Carve Out Trigger Reserve has not been reduced to zero, to pay Cerberus for the benefit of the Secured Parties, unless the obligations under the Financing

Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above, and then, to the extent the Post Carve Out Reserve has not been reduced to zero, to pay Cerberus for the benefit of the Secured Parties, unless all amounts owed under the Financing Agreement have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(c)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>. None of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these chapter 11 cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

5.    <u>Adequate Protection for Secured Parties</u>. The Secured Parties are hereby granted, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code or otherwise, the following

11

protections with respect to the Prepetition Liens for the consent of such Secured Parties to the use of their Prepetition Collateral (including Cash Collateral) and as adequate protection and for the diminution in value of the Prepetition Collateral (the "Diminution in Value"), whether or not such Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition Collateral (including, without limitation, Cash Collateral) or the stay of enforcement of any prepetition security interest arising from section 362 of the Bankruptcy Code, or otherwise (the items set forth in clauses (a) through (d) below shall be referred to collectively as the "Adequate Protection Obligations"):

(a)     Adequate Protection Liens.    Cerberus on behalf of the Secured Parties is granted, solely to the extent of any Diminution in Value, effective and perfected as of the date of the First Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, perfected, fully enforceable and binding postpetition security interests in and liens (together, the "Adequate Protection Liens") on all of the property, assets or interests in property or assets of each Debtor, each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), all of the issued and

12

outstanding capital stock of each subsidiary of such Debtor, all of the capital stock

of all other entities that are not subsidiaries directly owned by such Debtor, money,

investment property, deposit accounts, causes of action that are not Unencumbered

Actions (as defined below), Cash Collateral, and all cash and non-cash proceeds,

rents, products, substitutions, accessions, and profits of any of the collateral

described above (collectively, with respect to all such entities, the "Adequate

Protection Collateral"), as follows:

i.     under sections 361(2) and 363(c)(2) of the Bankruptcy Code, a fully perfected junior security interest in and lien on all Adequate Protection Collateral that also constitutes Prepetition Collateral, in all cases junior to the Prepetition Liens as well as all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Prepetition Liens;

ii.    under sections 361(2) and 363(c)(2) of the Bankruptcy Code, a junior lien upon all of the Adequate Protection Collateral of each Debtor and of each Debtor's estate that is, as of the Petition Date subject to valid, perfected, and non-avoidable liens in favor of third parties  that are senior in priority to the Secured Parties' prepetition liens and interests in the applicable Prepetition Collateral (the "Prior Liens"); and

iii.   under sections 361(2) and 363(c)(2) of the Bankruptcy Code, a first priority, perfected security interest in and lien upon all Adequate Protection Collateral of each Debtor and of each Debtor's estate that is, as of the Petition Date, not subject to any valid, perfected, and non-avoidable liens.

Notwithstanding the foregoing, the Adequate Protection Collateral will not include

any actions based on, or proceeds and property recovered in respect of, (i) claims

and causes of action arising under sections 544, 545, 547, 548, 549, 550, and 551

of the Bankruptcy Code; (ii) claims and causes of action that are "commercial tort

claims" as defined in section 9-102(a)(13) of the New York Uniform Commercial

Code; or (iii) claims and causes of action against any of the Secured Parties (collectively, "Unencumbered Actions").

(b)    Superpriority Claim.  Cerberus on behalf of the Secured Parties is granted, for the reasons set forth above in this paragraph 5, solely to the extent of any Diminution in Value, subject to the Carve Out, a superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 507(b) of the Bankruptcy Code, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 1113, and 1114 of the Bankruptcy Code, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, other than the Unencumbered Actions and proceeds thereof.

(c)    Adequate Protection Payments.  As set forth in the *Sixteenth Interim Order (I) Authorizing the Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [Docket No. 562], Cerberus shall continue to receive: (v) the payments described in Paragraph 2.c of the Tenth Interim Order, as modified by Paragraph 2.c of the Eleventh Interim Order and clause (ii) of Paragraph 2.c of the Fifteenth Interim Order; (w) the payments described in clause (ii) of Paragraph 2.c of the Fifteenth Interim Order; (x) cash in the amount of $1,000,000.00 to be delivered by the Debtors to Cerberus via wire transfer on or prior to confirmation of a chapter

14

11 plan as a condition to confirmation; (y) cash in the amount of $1,000,000.00 to be delivered by the Debtors to Cerberus on terms and timing to be agreed to by Cerberus and the Debtors; and (z) any and all additional payments reflected in the Wind-Down Budget.

(d)    <u>Secured Parties' Professional Fees</u>.  As further compensation for the consensual use of the Prepetition Collateral, including Cash Collateral, by the Debtors for the reasons set forth above in this paragraph 5, and in accordance with sections 361 and 363 of the Bankruptcy Code, each professional retained by the Secured Parties shall receive from the Debtors current cash payments of all reasonable and documented fees and disbursements, in each case promptly upon receipt of summary form invoices and without the need for such professional to file any fee statement or application with the Bankruptcy Court or provide detailed time entries to the Debtors or any other party; <u>provided</u> that all such payments shall be subject to the right of any party to seek to recharacterize the payment of fees and expenses provided by this Final Order and the underlying loan documents.

(e)    <u>Reservation of Rights</u>.  Notwithstanding any other provision hereof to the contrary, the grant of Adequate Protection Obligations to the Secured Parties pursuant hereto is without prejudice to the right of the Secured Parties to seek different or additional adequate protection, including without limitation the current payment of postpetition interest (at the applicable default rate), to seek payments under section 506(b) of the Bankruptcy Code when this Final Order is no longer in effect, or not to consent to any further use of Cash Collateral.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or

unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law.  Except as expressly provided herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties.  Nothing in this Final Order shall constitute an admission that the Secured Parties are not entitled to payment or allowance of claims under section 506(b) of the Bankruptcy Code.

6.    <u>Additional Provisions Regarding the Adequate Protection Obligations</u>.

(a)    The Adequate Protection Liens shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), including property or assets, if any, that does not secure the Prepetition Indebtedness.

(b)    Except as provided in this Final Order, the Adequate Protection Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(c)    [Reserved]

(d)    Unless expressly provided otherwise herein, the Adequate Protection Liens, Superpriority Claims, and other rights, benefits, and remedies granted under this Final Order to the Secured Parties, shall continue in these chapter 11 cases, in any superseding case or cases under the Bankruptcy Code (including

without limitation any case under chapter 7 of the Bankruptcy Code) (a "Superseding Case"), and following any dismissal of the chapter 11 cases, and such liens and claims shall maintain their priority as provided in this Final Order until all Adequate Protection Obligations have been indefeasibly paid in full in cash and completely satisfied.

(e)    All reasonable and documented fees paid and payable, and costs or expenses reimbursed or reimbursable by the Debtors to the Secured Parties as of the date of this Final Order are hereby approved, provided that any unresolved objections raised with respect to the reasonableness of such fees and out-of-pocket expenses shall be subject to resolution by the Bankruptcy Court.  All unpaid and reasonable fees, costs, and expenses shall be included in, and constitute part of, the Superpriority Claims and be secured by the Adequate Protection Liens.

7.    Perfection of Adequate Protection Liens.

(a)    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) which may otherwise be required under the law or regulation of any jurisdiction to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle Cerberus and the other Secured Parties to the priorities granted herein.

(b)    Without limiting the foregoing subparagraph, the Secured Parties are hereby authorized, but not required, to file or record financing statements,

17

trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination (except as specified herein), at the time and on the date of entry of the First Interim Order. The Debtors shall, if requested, execute and deliver to the Secured Parties all such agreements, financing statements, instruments and other documents as the Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)    A certified copy of this Final Order may, in the discretion of the Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Final Order for filing and recording, subject to payment of any filing or recording fees required under applicable nonbankruptcy law.

8. <u>Termination Events</u>.

(a)    The occurrence of any of the following events, unless waived by Cerberus in writing shall constitute a termination event with respect to the Debtors' right to use the Cash Collateral pursuant to this Final Order (the events set forth in clauses (i) through (xiv) below are collectively referred to herein as the "<u>Termination Events</u>"):

i.      [reserved];

ii.     [reserved];

iii.    failure of the Debtors to make any payment required under this Final Order after such payment becomes due under the terms hereof;

iv.     failure of the Debtors to comply in any material respect with any covenant, agreement, or provision of this Final Order;

v.      an order is entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order, or that has the effect of any of the foregoing, without the advance written consent of Cerberus;

vi.     the Bankruptcy Court (or any court of competent jurisdiction) enters an order dismissing any of these chapter 11 cases;

vii.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

viii.   the Bankruptcy Court (or any court of competent jurisdiction) enters an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in these chapter 11 cases;

ix.     any Debtor uses Cash Collateral for any purpose or in any amount other than (i) as expressly permitted under this Final Order or any other order of the Bankruptcy Court; or (ii) as otherwise expressly contemplated by the Budget or an order consented to by Cerberus;

x.      the Bankruptcy Court (or any court of competent jurisdiction) enters an order granting, approving, or allowing any superpriority claim with priority equal or senior to the Superpriority Claim;

xi.    12:01 a.m. (prevailing Eastern Time) on February 21, 2020 (or such later date as is specified in writing by Cerberus), unless the Bankruptcy Court has entered an order in form and substance acceptable to the First Lien Agent approving a disclosure statement in form and substance acceptable to the First Lien Agent for the Agreed Plan (as defined below);

xii.    12:01 a.m. (prevailing Eastern Time) on March 31, 2020 (or such later date as is specified in writing by Cerberus) unless the Bankruptcy Court has entered an order in form and substance acceptable to the First Lien Agent confirming a chapter 11 plan of liquidation in form and substance acceptable to the First Lien Agent (the "Agreed Plan of Liquidation");

xiii.    12:01 a.m. (prevailing Eastern Time) on April 15, 2020 (or such later date as is specified in writing by Cerberus); or

xiv.    the Bankruptcy Court (or any court of competent jurisdiction) enters an order terminating the use of Cash Collateral.

(b)    Remedies upon the Cash Collateral Termination Date. The Debtors shall provide notice to Cerberus (with a copy to counsel for the U.S. Trustee and counsel for the Committee) of the occurrence of any Termination Event within four hours of the Debtors becoming aware of such occurrence. The Debtors' right to use Cash Collateral pursuant to this Final Order, except to fund and use the Carve Out Reserves in accordance with paragraphs 4(a) and 4(b) above, shall automatically terminate at 12:01 a.m. (prevailing Eastern Time) on the date that is the second business day following the delivery of a written notice (any such notice, a "Cash Collateral Termination Notice," any such period of time beginning upon delivery of the Cash Collateral Termination Notice and concluding at 12:01 a.m. on the second business day following such delivery, the "Default Notice Period," and such second business day, the "Cash Collateral Termination Date") by Cerberus to counsel for the Debtors, counsel for the U.S.

20

Trustee, and counsel for the Committee of the occurrence of any Termination Event unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period or such occurrence is waived in writing by Cerberus in its sole and absolute discretion.   During the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral solely in accordance with the Budget and the terms of this Final Order.   Nothing contained herein shall prohibit or restrict the Debtors from seeking further relief from the Bankruptcy Court regarding the use of Cash Collateral following the delivery of any Cash Collateral Termination Notice, including the scheduling of a hearing on an expedited basis during the Default Notice Period.   On the Cash Collateral Termination Date, the Adequate Protection Obligations shall become immediately due and payable.  On the date that is the seventh calendar day following the delivery of the Cash Collateral Termination Notice, Cerberus and the other Secured Parties may, in each case subject to the Carve Out, exercise the rights and remedies available under the Financing Agreements, this Final Order, and applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral and Adequate Protection Collateral, provided that Cerberus and the other Secured Parties may seek entry of an order of the Bankruptcy Court prior to the expiration of such seven-day period authorizing Cerberus and the other Secured Parties to exercise such rights and remedies during such seven-day period (with any hearing before the Bankruptcy Court to

be scheduled on an expedited basis).  The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary or appropriate to permit such actions.  The seventh calendar day following the delivery of the Cash Collateral Termination Notice, or such earlier date on which Cerberus and the other Secured Parties may be entitled pursuant to a Bankruptcy Court order to exercise rights and remedies, shall be referred to herein as the "Termination Enforcement Date."  Notwithstanding the occurrence of the Cash Collateral Termination Date or the Termination Enforcement Date or anything herein, all of the rights, remedies, benefits and protections provided to the Secured Parties under this Final Order shall survive the Cash Collateral Termination Date and the Termination Enforcement Date.  Notwithstanding anything to the contrary in this Final Order, and for the avoidance of doubt, nothing in this Final Order grants Cerberus relief from the automatic stay to interfere with or take possession of property of the Debtors' estates based upon a Termination Event prior to the occurrence of the Termination Enforcement Date.

9.    Restriction on Use of Funds.  Notwithstanding anything herein to the contrary, no Adequate Protection Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds thereof, or any portion of the Carve Out may be used by any of the Debtors, their estates, any affiliate of the Debtors, the Committee, any trustee or examiner appointed in these chapter 11 cases or any chapter 7 trustee, or any other person, party or entity to, directly or indirectly, (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial

accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise; (b) prosecute or support any action that has the effect of contesting the Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Financing Agreements anywhere in the world; or (c) pay any claim of a prepetition creditor except as expressly allowed by this Final Order or other order of the Bankruptcy Court.

10.    <u>Investigation Period</u>.  The Investigation Termination Date (as defined in the First Interim Order) has passed and all persons and entities are forever barred from asserting claims or causes of action of the Debtors or their estates against any of the Secured Parties.

11.    <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before the Bankruptcy Court.  Nothing herein shall preclude the Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law. The rights of the Secured Parties are expressly reserved and entry of this Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Secured Parties' rights under the Financing Agreement and all related documents; (b) the Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) any of the Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Parties.

12.    <u>Amazon Matters</u>.

(a)    Notwithstanding anything to the contrary herein, (i) the Debtors shall deliver to Amazon.com, Inc. ("<u>Amazon</u>") or its designee cash in the

23

amount of $500,000[4] on or before January 10, 2020; (ii) the Debtors shall segregate amounts pre-funded on or after the date hereof by Amazon or its affiliates to be paid by the Debtors or their affiliates to third parties pursuant to the terms of the Transition Services Agreement[5] (the "Amazon Pre-Funded Payments") and, absent Amazon's express written consent, shall not use the Amazon Pre-Funded Payments for any purpose other than payment of the designated third parties; (iii) the Debtors shall promptly, but no later than 2 business days after received, transfer to Amazon 35% (which percentage represents the parties' estimate of Purchaser Accounts Receivable remitted to the Debtors and/or their affiliates) of all proceeds of accounts receivable received by the Debtors and their affiliates on or after the date hereof (regardless of whether such accounts receivable constitute Purchaser Accounts Receivable (as defined in the Asset Purchase Agreement, dated as of May 31, 2019, by and among the Parties (the "Amazon APA")) or Sellers Accounts Receivable (as defined by the Amazon APA)), subject to adjustment based upon the parties' weekly

---

[4]    In addition, the Debtors will cause another $500,000 of non-Debtor funds to be transferred from the Debtors' non-Debtor subsidiaries to Amazon or its designee on or before January 10, 2020.  Each of Amazon and its affiliates and each of the Debtors and their affiliates acknowledge that, as a result of the foregoing, the Debtors and the Debtors' affiliates, as applicable, may not be in compliance with the obligations arising under section 8.18(f) of the Amazon APA  Each of Amazon and its affiliates shall forbear from exercising any remedies in respect of any breach of 8.18(f) of the Amazon APA until January 31, 2020, or such further date agreed by the Debtors and Amazon in writing.  For the avoidance of doubt, Amazon and its affiliates do not waive any default that exists or may exist under Section 8.18 of the Amazon APA or otherwise.  The Debtors represent that Sizmek Technologies Ltd., an Israeli company, has assets, including the equity of its direct and indirect subsidiaries, in excess of its known and projected liabilities and is projected to pay all of those liabilities.

[5]    As used herein, the "Transition Services Agreement" refers to that certain Transition Services Agreement (Bilateral), dated as of June 21, 2019, by and among Sizmek Technologies Ltd., an Israeli company, Sizmek Technologies, Inc., a Delaware corporation, Sizmek Technologies Ltd., and a company incorporated in England and Wales, as Sellers, and Amazon.com, Inc., as Purchaser (collectively, the "Parties"), as amended by that certain Amendment to Transition Services Agreement (Bilateral), dated as of July 15, 2019, by and among the Parties.

reconciliation and agreement; (iv) the Debtors shall promptly pay to Amazon any other payments that the Debtors or their affiliates receive from any third-party relating to or arising from Amazon's or its affiliates ownership of the Purchased Assets or operation of the Business (each as defined in the Amazon APA); and (v) the Debtors and their affiliates shall, as of January 10, 2020, and subject to adjustment based upon the Comprehensive Reconciliation, assign and transfer to Amazon the proceeds of accounts receivable received by Amazon or its affiliates through December 17, 2019, on account of Sellers Accounts Receivable (as defined in the Amazon APA) collected by Amazon and its affiliates in the asserted amount of $657,836.64, which proceeds shall be applied to reduce the balance of amounts collected by the Debtors and their affiliates on account of the Purchaser Accounts Receivable but not yet transferred to Amazon.

(b)     In addition to the foregoing, and notwithstanding anything to the contrary herein, until such time as Amazon has received payment in full in cash of all amounts collected by the Debtors or their affiliates on account of the Purchaser Accounts Receivable but not yet transferred to Amazon on or prior to such date (such amount, the "Outstanding Purchaser Accounts Receivable"),[6] on each Monday beginning with January 13, 2020, the Debtors shall transfer to Amazon or its designee sixty percent (60%) of all

---

[6]     The exact amount of the Outstanding Purchaser Accounts Receivable is still subject to reconciliation. The amount of Outstanding Purchaser Accounts Receivable as of December 17, 2019, shall be agreed to by the Debtors and Amazon by no later than January 31, 2020, in accordance with the Comprehensive Reconciliation, as outlined below.

funds received by the Debtors[7] from any source on or after the date hereof up to the amount of the Outstanding Purchaser Accounts Receivable. Amazon shall, by January 10, 2020 and each succeeding Friday, report to the Debtors and their affiliates any proceeds of any accounts receivable received by Amazon on account of Sellers Accounts Receivable (as defined in the Amazon APA), in each case as of the preceding Tuesday or Wednesday, with any supporting detail (each such report, an "Updated AR Report"). The Debtors shall have 5 business days to review and provide any objections to each Updated AR Report. If the Debtors do not provide any objections in such timeframe, the information in such Updated AR Report shall be deemed final. Amazon shall retain the total amount of Sellers Accounts Receivable received by Amazon and its affiliates as reflected in the Updated AR Report and apply such amounts to reduce the balance of the Outstanding Purchaser Accounts Receivable.

(c)    The Debtors and Amazon shall engage in a reconciliation process to expeditiously resolve (i) the amounts of the Outstanding Purchaser Accounts Receivable (as of December 17, 2019), (ii) the amounts of the Sellers Accounts Receivable received by Amazon and its affiliates (as of December 17, 2019),[8] (iii) the amounts due and owing (as of December 31, 2019) from Amazon and its affiliates to the Debtors and their affiliates,

---

[7]    In addition, the Debtors will cause the Debtors' non-Debtor subsidiaries to transfer sixty-percent (60%) of all funds received by the non-Debtor subsidiaries from any source, to Amazon on the same timeframe as the Debtors' payments under this subparagraph (b).

[8] The parties reserve their rights in connection with the reimbursement of the costs associated with such reconciliation pursuant to the Transition Services Agreement.

including, without limitation, pursuant to the Transition Services Agreement and amounts due to Amazon Web Services, and (iv) the amounts due and owing (as of December 31, 2019) from the Debtors and their affiliates to Amazon and its affiliates, including, without limitation, pursuant to the Transition Services Agreement and amounts due to Amazon Web Services (the "<u>Comprehensive Reconciliation</u>").  For the avoidance of doubt, the parties intend to work in good faith to reconcile all Purchaser Accounts Receivable and Sellers Accounts Receivable through January 7, 2020 as part of the Comprehensive Reconciliation.  The Debtors and Amazon agree to commit the resources reasonably necessary and to act in good faith to complete the Comprehensive Reconciliation of the Outstanding Purchaser Accounts Receivable and the Sellers Accounts Receivable received by Amazon and its affiliates by no later than January 31, 2020.  The Debtors and Amazon agree to commit the resources reasonably necessary and to act in good faith to complete the Comprehensive Reconciliation of all other amounts asserted as owing by no later than January 31, 2020.  In connection therewith, by no later than January 17, 2020, the Debtors and Amazon shall exchange comprehensive reports in which each party details their respective estimates of the amounts (i) due and owing to such party and its affiliates from the other party and its affiliates; and (ii) due and owing from such party and its affiliates to the other party and its affiliates, along with detailed back-up documentation for such positions.  Updates to the comprehensive reports shall be

exchanged no later than January 24, 2020, by the parties.  Each of Amazon and its affiliates, and each of the Debtors and their affiliates, reserve all of their rights and are waiving no arguments in connection with the foregoing. If the parties are unable to agree on the Comprehensive Reconciliation, either party may return to the Bankruptcy Court to adjudicate any outstanding issues, including on an expedited basis (subject to the Bankruptcy Court's agreement and availability).

(d)     Until Amazon has received payment in full in cash of the Outstanding Purchaser Accounts Receivable and any amounts asserted as owing to it under the Amazon APA and, as applicable, the Transition Services Agreement, the Debtors shall provide Amazon with a copy of any regularly delivered written financial reporting provided to Cerberus.  Furthermore, the Debtors will continue to provide the access Amazon has as of the date hereof to the account information and balances for all accounts of the Debtors and their affiliates.

(e)     Notwithstanding anything to the contrary herein, each of Amazon and its affiliates, and each of the Debtors and their affiliates, reserve all of their rights, claims, causes of action, remedies or otherwise relating to or arising out of the Purchaser Accounts Receivable, the Sellers Accounts Receivable received by Amazon and its affiliates, the Amazon APA, the Transition Services Agreement and any amounts owed by either party to the other, and are waiving no arguments in connection with the foregoing.

(f)     Notwithstanding anything to the contrary herein, this Final Order shall not be construed in any way as a waiver or relinquishment of any rights that Amazon may have to bring or be heard on any matter brought before the Bankruptcy Court or the right of the Debtors to object, challenge, or contest any such matter.   Notwithstanding anything to the contrary herein, this Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtors may have to bring or be heard on any matter brought before the Bankruptcy Court or the right of Amazon to object, challenge, or contest any such matter.

13.     <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the Motion, any other order of the Bankruptcy Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" such other document, the terms and provisions of this Final Order shall govern.  To the extent there is any inconsistency between this Final Order and any order concerning the Debtors' cash management systems or bank accounts or any other "first day" or "second day" relief, this Final Order shall control.

14.     <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

15.     <u>Headings</u>.  Headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

16.    <u>Adequate Notice</u>.  The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(b)(3), and the Local Bankruptcy Rules, and was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Final Hearing is required.  The Debtors shall promptly mail copies of this Final Order to the Notice Parties, any known entity affected by the terms of this Final Order, and any other entity requesting notice after the entry of the First Interim Order.

17.    <u>Binding Effect; Successors and Assigns</u>.  Except as expressly provided herein, the provisions of this Final Order, including all findings herein, shall be binding upon all parties-in-interest in these chapter 11 cases, including, without limitation, the Secured Parties, the Committee, any examiner appointed in these chapter 11 cases, and the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor) whether in these chapter 11 cases, in any successor cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the Secured Parties and their respective successors and assigns.

18.    <u>Certain Waivers</u>.

a.    The Debtors have irrevocably waived and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Secured Parties upon, the Prepetition Collateral or the Adequate Protection Collateral.

b.    In light of the subordination of the Secured Parties' liens and super-priority administrative claims to the Carve Out, the Debtors agree and acknowledge that each of

30

the Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtors will not seek to invoke the "equities of the case" exception as to any of the Secured Parties with respect to the proceeds, products, rents, issues, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral, and the Debtors will not take the position that any expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring, or profits from any of the Prepetition Collateral or the Adequate Protection Collateral under section 552(b) of the Bankruptcy Code.

c.      In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral or the Adequate Protection Collateral.

d.      No obligation, payment, transfer, or grant of security to the Secured Parties under this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any other applicable law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

19.      The provisions of this Final Order, including the grant of claims and liens to or for the benefit of the Secured Parties, and any actions taken pursuant to this Final Order, shall survive the entry of any order converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

20.      In the event that any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of the Bankruptcy Court or any other court, no such modification, amendment, or vacatur shall affect the validity, enforceability, or priority of

31

any Adequate Protection Liens incurred or any Superpriority Claim granted to the Secured Parties under this Final Order.

21.     To the extent not already provided for in this Final Order, the Debtors and their officers, employees, professionals, and agents are hereby authorized and empowered to take such acts as are necessary or appropriate to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

22.     This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon the Bankruptcy Court's signature hereof; there shall be no stay of execution or effectiveness of this Final Order.

23.     The Bankruptcy Court has and will retain jurisdiction and power to enforce this Final Order according to its terms.

New York, New York
Dated: January 9, 2020

/s/ Stuart M. Bernstein

THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE